223 F.3d 1020 (9th Cir. 2000)
 AARATHI DESAIGOUDAR, as Trustee of the Chan Desaigoudar Charitable Foundation, a California charitable trust, Plaintiff-Appellant,
v.
WADE MEYERCORD; SCOTT HOVER-SMOOT; ANGEL JORDAN; JEFFREY KALB; C. KUMAR PATEL; STUART SCHUBE; JOHN SPRAGUE; and JOHN TREWIN, Defendants-Appellees.
 No. 98-17154
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted February 17, 2000--San Francisco, California
Filed September 8, 2000
 Richard J. Archer, Occidental, California, for the plaintiff-appellant.
 Valerie M. Wagner, Palo Alto, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California, D.C. No. CV-97-21003-JW; James Ware, District Judge, Presiding
 Before: Joseph T. Sneed, Mary M. Schroeder, and A. Wallace Tashima, Circuit Judges
 SNEED, Circuit Judge:
 
 
 1
 The question in this appeal is whether the district court should have dismissed Desaigoudar's second amended complaint with prejudice for repeated failure to satisfy Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. S 78u4(b). Our jurisdiction over this question is described at 28 U.S.C. S 1291. We review de novo an order dismissing a case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000). The usual practice in Rule 12(b)(6) cases is to take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff. See id. However, the PSLRA has modified the liberal, notice pleading standard found in the Federal Rules of Civil Procedure. See In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, (9th Cir. 1999). Accordingly, we now examine a securities fraud complaint to determine whether the plaintiff has complied with the more stringent pleading requirements of the PSLRA. See id. De novo review is also appropriate when, as here, the district judge denied leave to amend. See Franklin v. Terr, 201 F.3d 1098, 1101 (9th Cir. 2000).
 
 
 2
 We affirm.
 
 I.
 A. PROCEDURAL HISTORY
 
 3
 Aarathi Desaigoudar, in her capacity as the trustee of the Chan Desaigoudar Charitable Foundation (the "Foundation"), sued officials of California Micro Devices Corporation ("CMD")[1] in 1997 for securities fraud. When Appellees moved to dismiss under Rule 12(b)(6), Desaigoudar offered an "Amended Complaint." Like the original, it alleged violations of Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5 and 14a9 of the Securities Exchange Commission (the "SEC"). See 15 U.S.C. SS 78j(b), 78n(a); 17 C.F.R. SS 240.10b-5, 240.14a-9. The district court found this pleading also deficient and dismissed the Section 10(b), Rule 10b-5 claim with prejudice. However, it granted leave to amend the Section 14(a), Rule 14a-9 claim, subject to the following admonition:
 
 
 4
 [I]n preparing a second amended complaint , Plaintiff must adhere to the strict requirements of Rule 9(b) and the Private Securities Litigation Reform Act. Plaintiff's counsel must also comply with Rule 11, Fed.R.Civ.P. Repeated failureto comply with these pleading requirements will result in the dismissal of the claim, with prejudice.
 
 
 5
 Id. (citations omitted) (emphasis added).
 
 
 6
 Desaigoudar subsequently filed what the district court labeled a "Second Amended Complaint." The entire complaint was dismissed with prejudice. Desaigoudar then filed this timely appeal.
 
 B. FACTUAL HISTORY
 
 7
 CMD sells microprocessors and related products. Its sales revenues reached $33 million in 1997. As of October 1998, the Foundation owned 72,580 shares of CMD stock, which were valued at approximately $372,000.
 
 
 8
 In September 1994, CMD entered into a one-year research and development contract with CellAccess, Inc., a company involved in developing asynchronous transfer mode technology.[2] In exchange for a 56% interest in CellAccess' technology and the option to renew the contract after the year, CMD agreed to make monthly payments of $90,000. CMD terminated these payments in April 1995 and relinquished its 56% interest. Sometime thereafter, for a reason not revealed by the record, CMD received a $1.5 million termination fee. In November 1995, CellAccess was acquired by FORE Systems, Inc. ("FORE Systems"), a Pittsburgh, Pennsylvania company. The purchase price was $60 million.
 
 
 9
 CMD held its 1995 Annual Shareholder Meeting on September 15th, prior to FORE Systems' purchase of CellAccess. The agenda included the re-election of the individual Appellees and a vote on a stock option plan for their benefit. A proxy solicitation in anticipation of these votes had been previously posted on June 12th, and a press release had followed on July 27th.[3] These materials explained that CMD had registered a quarterly profit for the first time in two years.
 
 II.
 
 10
 To repeat, the second amended complaint alleges that Appellees, as officers and directors of CMD, intentionally violated Exchange Act Section 14(a) and SEC Rule 14a-9. These disallow the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading. See 15 U.S.C. S 78j(b); 17 C.F.R. S 240.14a-9. In addition, a Section 14(a), Rule 14a9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction.[4] See TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 444 & n.7 (1976).
 
 
 11
 The complaint clearly sounds in fraud.[5] Thus, Federal Rule of Civil Procedure 9(b) and the PSLRA require Desaigoudar to plead her case with a high degree of meticulousness. See Yourish v. California Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (noting applicability of Rule 9(b) to securities fraud claims); In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 996 (9th Cir. 1999) (describing heightened pleading standard of the PSLRA). Rule9(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The PSLRA modifies Rule 9(b), providing that a securities fraud plaintiff shall identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed. See In re Silicon Graphics, 183 F.3d at 996; 15 U.S.C. S 78u-4(b)(1). The district court found that Desaigoudar did not comply with these standards. We agree.
 
 III.
 
 12
 The complaint alleges that Appellees: (1) misled shareholders when they announced a quarterly profit in CMD's proxy materials; (2) failed to disclose that Appellee Jordan had a conflict of interest; and (3) misrepresented Jordan's qualifications for reelection as a director of CMD. None of these allegations, which we shall discuss seriatim, constitutes a valid claim.
 
 
 13
 A. ALLEGATION ONE: MISREPRESENTATION OF "PROFIT"
 
 
 14
 Desaigoudar argues that the proxy statements the Appellees issued in June and July of 1995 misled shareholders because they described CMD's quarterly performance as "profitable." In her view, the shareholders should have been told that CMD's quarterly performance was a loss. She asserts that Appellees engineered the profit, in part, when they caused CMD to cancel monthly funding for CellAccess and thereby abandoned CMD's 56 percent interest in the venture. Desaigoudar reasons from FORE Systems' November 1995 purchase of CellAccess that the cancellation and abandonment of the venture caused CMD to forego 56 percent of a $60 million opportunity, or $36 million. She then alleges that the Appellees knowingly and intentionally failed to inform shareholders that CMD had forfeited an asset worth many millions of dollars in order to generate a portion of the profit that they claimed. Her argument is flawed.
 
 
 15
 Rule 14a-9 requires a complainant to demonstrate why a challenged proxy statement was misleading "at the time . . . made." C.F.R. S 240.14a-9. Thus, the issue here is whether the Appellees could have known how much CellAccess was worth to CMD when it ceased funding for CellAccess. If there was no way to know, it is impossible to fault the Appellees. Failure to disclose information that does not yet exist cannot be the predicate for Rule 14a-9 liability. See 17 CFR S 240.14a-9. Obviously Desaigoudar has suspicions, but that is not enough. We can therefore eliminate FORE Systems' purchase of CellAccess as a possible source for knowledge of the company's value. That transaction, which appears to be the only exchange that actually involved CellAccess, took place several months after the proxy statements were issued in the summer of 1995.
 
 
 16
 Desaigoudar relies on three other reasons why the Appellees would have known CellAccess' value at the time they posted the proxy statements. They are that: (1) Appellee Jordan performed a due diligence investigation of CellAccess in 1994; (2) an unidentified "high technology publication" mentioned CellAccess as a "promising new company " in March 1995; and (3) sometime just prior to that favorable mention CISCO Systems paid $120 million for a company that, like CellAccess, was developing asynchronous transfer mode technology. We think these reasons are not enough to substantiate Desaigoudar's claim. Not one of the described events occurred contemporaneously with the proxy solicitations or CMD's cessation of the CellAccess project. There is also no indication that the Appellees knew about the "recognition" CellAccess received or about CISCO Systems' purchase of a CellAccess "competitor."
 
 
 17
 Ultimately, the greatest flaw in Desaigoudar's case is the fact that any estimate that the Appellees could have fabricated based on these events would have been utterly unreliable. The SEC has historicallydisfavored forecasts and value estimates in proxy statements. See South Coast Services Corp. v. Santa Ana Valley Irrigation Co., 669 F.2d 1265, 1270 (9th Cir. 1982). An exception to this treatment has existed for estimates based on "objective, reasonably certain data, such as commodity prices prevailing in an active market. " See id. at 1270-71. Here, the events upon which the complaint relies do not comprise the "objective, reasonably certain data" spoken of in the exception. Nothing in the complaint demonstrates that CellAccess was akin to a "commodity" traded in an "active market." Thus, we cannot fault the Appellees for omitting from the proxy statements an estimate based on those facts presented in the complaint. No reasonable shareholder would have considered such an estimate honestly presented important in deciding how to vote. Consequently, we agree with the district court that Desaigoudar failed to plead a material omission and that the Appellees are not liable under Section 14(a) and Rule 14a-9. See TSC Industries, Inc. v. Northway, Inc., 426 U.S. at 449 (noting that "[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote"); Stahl v. Gibralter Financial Corp., 967 F.2d 335, 337 (1992) (noting that materiality is the "touchstone of a[S]ection 14(a) violation").
 
 
 18
 Broadly read, Desaigoudar's complaint would require corporate officials to speculate about the value of potentially foregone opportunities and disclose the results whenever they might dissuade shareholders from adopting by proxy the officials' recommendations. However, Section 14(a) and Rule 14a-9 do not require corporate officials to predict such distant misfortunes. See South Coast Services Corp., 669 F.2d at 1270. In a note appending Rule 14a-9, the SEC identifies "[p]redictions as to specific market values " as, depending on the facts of a particular case, possible examples of the very wrong that Rule 14a-9 was designed to prevent. 17 CFR S 240.14a-9. Since we conclude that a prediction based on the facts in the complaint would have been unreliable, we cannot conclude that omitting it from the proxy statements violated the law.
 
 
 19
 Section 14(a) and Rule 14a-9 do not obligate corporate officials to present, no matter how unlikely, every conceivable argument against their own recommendations. They instead require that officials divulge all known material facts so that shareholders can make informed choices. See J.I. Case Co. v. Borak, 377 U.S. 426, 431 (1964) (noting that Section 14(a) was designed to "prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation"). That is what the Appellees appear to have done.
 
 
 20
 Desaigoudar protests that the gravamen of the complaint was "self-dealing" by the Appellees and their "concealed mismanagement" of CMD, not their failure to provide an estimate of CellAccess' resale value. Appellant's Opening Br. at 23. We find this interpretation unconvincing in light of the clear language of her complaint, which states: "The press release and proxy solicitation material were materially misleading as to the true general nature and terms of the quarterly profit, and as to whether Defendants merited stock options. Neither document disclosed that the modest quarterly profit . .. meant a $36 million loss . . . ." Second Amended Complaint at 8 (P 48). Moreover, the complaint makes no cognizable claim under Section 14(a) and Rule 14a-9 to the extent that it might allege something other than a material misstatement or omission in connection with a proxy statement. See, e.g., Maher v. Zapata Corp., 714 F.2d 436, 444 n.16 (5th Cir. 1983) (noting inapplicability of Section 14(a) to claims of alleged mismanagement or breach of fiduciary duty).
 
 
 21
 Desaigoudar also contends that the Appellees failed to alert CMD shareholders that the heralded quarterly profit was not entirely from "operations," as the investors would likely presume. In her view, whatwas fatally absent from the proxy solicitations was an explanation that the Appellees generated a part of the quarterly profit by eliminating CMD's ties with CellAccess. That is, they should have disclosed that some portion of the quarterly profits came from abandoning CellAccess, collecting the termination fee, and not having to pay $90,000 per month to maintain CMD's interest in CellAccess.[6]
 
 
 22
 We are unable to agree. Desaigoudar cites no authority for the proposition that the Appellees misused the word "profit." Profit may be understood properly as "gain" or "[t]he excess of revenues over expenses in a business transaction." BLACK'S LAW DICTIONARY 1227 (7th ed. 1999). There isno dispute that CMD's revenue exceeded its expenses during the relevant fiscal quarter. Thus, it was not misleading to say that CMD turned a profit, and Appellees were entitled to disclose that favorable information to shareholders. Desaigoudar's theory that the ordinary CMD investor would think "profit" related only to "operations" does not provide the cause of action her complaint is otherwise lacking.
 
 B. ALLEGATION TWO: C ONFLICT OF INTEREST
 
 23
 The second amended complaint also alleges that Appellees violated Section 14(a) when they did not disclose that Appellee Jordan had a conflict of interest. Jordan served as "Director Emeritus" of the Pittsburgh High Technology Council (the "Council") while he was a director of CMD. The Council's raison d'etre was to lure high technology businesses away from areas like California, where CMD resides, to Jordan's home town of Pittsburgh, Pennsylvania, where FORE Systems is located. Since the complaint contains no facts demonstrating that Jordan personally or financially benefitted from FORE Systems' purchase of CellAccess, the district court concluded that there was no conflict of interest.
 
 
 24
 Desaigoudar disagrees. She claims that a conflict can exist without a personal or financial benefit to the conflicted, such as when a "director appears on both sides of a transaction." Appellant's Opening Brief at 16. In support, she cites a law review note[7] and the American Bar Association Model Business Corporation Act, P 8.60 (3rd ed. 1997) (the "Model Act"). She makes no suggestion that either authority should be controlling.
 
 
 25
 Moreover, the complaint does not indicate how Jordan's presence on the Council placed him "on both sides " of CMD's dealings with CellAccess. While suspicions might be aroused by the fact that Jordan and the president of FORE Systems served together on the Council, suspicious circumstances alone cannot satisfy Rule 9(b) or the PSLRA. See In re Silicon Graphics, 183 F.3d 970. The facts as Desaigoudar presents them do not suggest that Jordan arranged for CMD to terminate funding for CellAccess so that, seven months later, FORE Systems could purchase the company. In addition, the Council was not a party to and never had any financial interest in either the termination or the purchase. Jordan therefore had no discernable conflict for Appellees to disclose in CMD's June and July 1995 proxy materials.
 
 
 26
 C. ALLEGATION THREE: MISREPRESENTATION OF JORDAN'S BACKGROUND
 
 
 27
 The second amended complaint further alleges that Appellees violated Section 14(a) when they falsely held out Jordan as a director of Keithley Instruments, Inc. ("Keithley").[8] However, the complaint does not suggest that Appellees' statements about Jordan and Keithley werematerial misrepresentations. There are, in other words, no facts to support the inference that it was substantially likely that a reasonable CMD shareholder would have considered the nature of Jordan's relationship with Keithley important in deciding how to vote. Since there can be no Section 14(a) liability without materiality, this allegation is defective. See TSC Industries, 426 U.S. at 449; Stahl, 967 F.2d at 337.
 
 IV.
 
 28
 We conclude that, even after three attempts, Desaigoudar has failed to state a claim because she failed to heed the district court's warning to comply with Rule 9(b) and the PSLRA. This subjected the complaint to the distinct possibility of dismissal with prejudice. See Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quoting Ascon Properties, Inc. v. Mobile Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989); 15 U.S.C. S 78u-4(b)(3)(A) (mandating dismissal under the PSLRA for failure to plead adequately a securities fraud claim). Nevertheless, this court has decided that "dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Griggs v. Pace Am. Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999). It is clear that no amendment could save Desaigoudar's complaint. The district court is therefore
 
 
 29
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The defendants (now "Appellees") were: (1) Jeffrey Kalb, President and CEO since December 1994; (2) Wade Meyercord, Chairman of the Board since October 1994; (3) C. Kumar Patel, director from 1989 to June 1996; (4) Stuart Schube, director of and consultant to CMD; (5) John L. Sprague, director of and consultant to CMD; (6) Angel Jordan, director of and consultant to CMD as well as member of CMD's compensation committee; (7) John Trewin, CFO; and (8) Scott Hover-Smoot, Secretary and corporate counsel to CMD.
 
 
 [2]
 This technology facilitates the electronic transference of data, voice, and other information.
 
 
 [3]
 We agree with the parties and the district court that the press release was part of a continuous plan to encourage a favorable vote by shareholders and was, therefore, a proxy solicitation. See 17 C.F.R. S 240.14a-1.
 
 
 [4]
 We decline to evaluate whether Desaigoudar has pleaded these additional elements sufficiently because we conclude that the complaint does not allege a material misstatement or omission.
 
 
 [5]
 The district court rejected as "disingenuous" Desaigoudar's claim that the complaint also sounds in negligence. See Order Granting Defendants' Motion to Dismiss at 5 n.2 (Oct. 18, 1998). After carefully reviewing the complaint's language, which asserts "knowing[ ] and intentional[ ]" misconduct by the Appellees, we conclude that the rejection was proper. Second Amended Complaint at 14 (P 81).
 
 
 [6]
 Desaigoudar acknowledges that "other things" contributed to the quarterly profit. Second Amended Complaint at 8 (P 48).
 
 
 [7]
 Mary A. Jacobson, Note, Interested Director Transactions and the (Equivocal) Effects of Shareholder Ratification, 21 DEL. J. CORP. L. 981, 986 (1996).
 
 
 [8]
 Keithley described itself as "a measurement test company." See Second Amended Complaint at 4 (P 15).