James J. HAYES, on behalf of himself and all others similarly situated, and Thomas Boots, on behalf of himself and all others similarly situated, Plaintiffs,

v.

CROWN CENTRAL PETROLEUM CORPORATION, Michael F. Dacey, Stanley A. Hoffberger, Barry L. Miller, Frank B. Rosenberg, Henry A. Rosenberg, Jr., John E. Wheeler, Jr., Jack Africk, Harold Ridley, Credit Suisse First Boston Corporation and Rosemore, Inc., Defendants.

No. CIV.A.02–122–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 4, 2002.

Timothy D. Battin, Straus & Boies LLP, Fairfax, VA, for Plaintiffs.

Elizabeth Flannagan Edwards, McGuireWoods LLP, Richmond, VA, Robert Stephen Bennett, Robert William

Warnement, Skadden, Arps, Slate, Meagher & Flom, John Thorpe Lawrence Richards, Jr., Suzanne Miller Trinh, Shearman & Sterling, Washington, DC, for Defendants.

## MEMORANDUM OPINION

HILTON, Chief Judge.

This case is before the Court on the Defendants' motions to dismiss. In its Order and Memorandum Opinion of June 13, 2002, this Court dismissed the claim under Section 14(a) of the Securities Exchange Act of 1934 because Plaintiffs made only the conclusory allegation that Defendants' opinion was subjectively false and thereby failed to satisfy the heightened pleading standards of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, denied the motions to dismiss the state law claims, and gave Plaintiffs an opportunity to amend.

In the Second Amended Complaint in Count I, II and III, Plaintiffs re-allege Section 14(a) claims and Section 20(a) claims for an allegedly false opinion that the merger price was fair.

In Count IV, Plaintiffs again allege Maryland state law claims for breach of fiduciary duty, and Count V alleges a violation of Section 14(a).

Defendants now move to dismiss all Counts including the state claims and ask the Court to reconsider its prior ruling in regard to the Maryland state law claims.

A rule 12(b)(6) motion to dismiss tests whether the Second Amended Complaint sets forth all of the elements of a cause of action upon which relief can be granted. In considering a motion to dismiss, the court takes as true the well-pleaded allegations of the complaint but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000). A motion to dismiss should be granted and the case dismissed if the court, taking the facts as alleged by Plaintiffs to be true, concludes that Plaintiffs have failed to state a claim. *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir.2001); *Austin v. Reynolds Metals Co.*, 327 F.Supp. 1145, 1154 (E.D.Va.1970).

Counts I, II, III and V of the Second Amended Complaint, which assert claims under Sections 14(a) [1] and 20(a) of the Securities Exchange Act of 1934, are subject to the heightened pleading standards of the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.* (2002). *See also Giarraputo vs. UNUMProvident Corp.*, No. 99-301-P-C, 2000 WL 1701294, at *10 (D.Me. Nov. 8,

---

[1]. Section 14(a) and SEC Rule 14a-9 prohibit the solicitation of proxies by means of materially false or misleading statements. Section 14(a) provides in full that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security

(other than an exempted security) registered pursuant to section 781 of this title. 15 U.S.C. § 78n(a) (2002). Rule 14a-9 provides in relevant part that:

> No solicitation subject to this regulation shall be made by means of any proxy statement...containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a-9(a) (2002).

2000). Under the PSLRA, Plaintiffs are required to specify not only each statement or omission alleged to have been misleading, but also the reason or reasons why the statement is misleading. 15 U.S.C. § 78u–4(b)(1). The PSLRA states:

(1) Misleading statements and omissions

In any private action arising under this chapter in which the plaintiff alleges that the defendant-

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

*Id.* As to claims based on misstatements alleged to have been knowingly made, the PSLRA imposes an even more stringent requirement that facts alleged be sufficient to give rise to a strong inference of knowing conduct:

(2) Required state of mind

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2). The statute further mandates that "the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met." *Id.* § 78u–4(b)(3)(A).

■ Plaintiffs have re-alleged Defendants are liable because they "should have known" the merger price was not fair, and fail to satisfy the *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), requirement that the false opinion must have been knowingly expressed. Plaintiffs assert that all allegations of fraudulent conduct are expressly excluded from the claim. The elements of fraudulent conduct necessarily include knowing conduct, and there are no allegations that the Defendants knew the Opinion was wrong at the time it was issued. *Virginia Bankshares* holds "that an opinion is only false if the speaker does not in fact hold that opinion." *In re McKesson HBOC, Inc., Sec. Litig.*, 126 F.Supp.2d 1248, 1265 (N.D.Cal.2000) ("plaintiff must plead with particularity why the statement of opinion was objectively and subjectively false"); *see also In re Reliance Sec. Litig.*, 135 F.Supp.2d 480, 515 (D.Del.2001) (requiring a showing that a statement of opinion was both objectively and subjectively false).

Plaintiffs have amended their Complaint by adding language that Defendants "knew" that the opinion in the Proxy Statement was false and that "they knowingly issued that false statement." The mere insertion of the word "knew," absent more, is insufficient to state a claim under the Federal Securities laws. *In re Harmonic, Inc. Sec. Litig.*, 163 F.Supp.2d 1079, 1090 (N.D.Cal.2001); *Krim v. Coastal Physician Group, Inc.*, 81 F.Supp.2d 621, 632 (M.D.N.C.1998). Plaintiffs are required to "state with particularity facts giving rise to a *strong inference*" that the defendants *knowingly* issued a false opinion in the Proxy Statement. 15 U.S.C. § 78u–4(b)(2). As stated by the Fourth

Circuit in *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 620 (4th Cir.1999), and by contrast with notice pleading, "the PSLRA does seek to heighten the standard for pleading scienter, and so 'changes what a plaintiff must plead in his complaint in order to survive a motion to dismiss.'" *Id.* (citation omitted).

Plaintiffs do not allege any writing, conversation or statement indicating that Crown or any one of the eight director defendants actually believed the merger price was not fair. Rather, Plaintiffs allege facts that Plaintiffs contend show that Defendants knew that the merger price was not fair to the public stockholders of Crown.

However, Plaintiffs fail to allege how any of these facts give rise to a strong inference that any defendant did not believe that the merger price was fair when the Proxy Statement containing their opinion was issued. 15 U.S.C. 78u–4(b)(2); *see also ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir.2002) (requiring plaintiffs to plead with particularity why a statement is misleading). Plaintiffs assert that The Novelly Group was paid $12.50 per share for its Crown stock. However, the Proxy Statement states that The Novelly Group would be paid $10.50 per share, and be reimbursed $1.75 million for its documented expenses. This reimbursement occurred before the issuance of the Proxy Statement and was not contingent on the consummation of the merger. Thus, The Novelly Group was to be paid what every other stockholder was to be paid for their stock—$10.50 per share.

Plaintiffs further assert that Defendants knew the merger price was unfair because the defendants knew that on February 2, 2001, Phillips Petroleum Corporation announced the purchase of Tosco Corporation which caused an immediate rise in the market prices of the stocks of refining companies. However, the Proxy Statement was issued on January 31, 2001.

Plaintiffs also allege that Credit Suisse First Boston Corporation (CSFB), Crown's financial advisor, was representing both the buyer and the seller. However, the Proxy Statement plainly discloses, that the buyer was Rosemore, who had its own financial advisor, AegisMuse. Plaintiffs' allege that CSFB advised Crown's full Board as well as the Independent Committee of the Board and that a portion of CSFB's fee was contingent on consummation of the merger. This was disclosed in the Proxy Statement.

Plaintiffs allege that the defendants knew that a liquidation valuation of Crown had not been made. Both the fact that a liquidation valuation had not been made and the reasons why were set out in the Proxy Statement. The remaining facts concerning refining margins, sales of other refineries, settlement of the labor dispute and the termination of the Statoil contract, are also discussed in detail in the Proxy Statement.

■ Allegations that Defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to state a claim under the Federal Securities laws. *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000); *In re NAHC, Inc., Sec. Litig.*, No. CIV.A. 00–4020, 2001 WL 1241007, at *19 (E.D. Pa. Oct 17, 2001) (" 'Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.' ") (citation omitted).

Plaintiffs also allege the defendants made false or misleading statements of fact or omitted material facts thereby ren-

dering statements in the Proxy Statement false or misleading.

To prevail on a Section 14(a) claim, a plaintiff must demonstrate that (1) the defendant made a material misrepresentation or omission in a proxy statement (2) with the requisite state of mind (3) that caused the plaintiff's injury and (4) the proxy solicitation was an essential link in the accomplishment of the transaction. *In re Reliance Sec. Litig.*, 135 F.Supp.2d 480, 511 (D.Del.2001) (citing *General Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3rd Cir. 1992)). Moreover, damages are recoverable "only when the transaction that was approved through the false proxy statement was the 'direct cause of the pecuniary injury for which recovery is sought.'" *In re NAHC, Inc.*, 2001 WL 1241007, at *22 (quoting *Cathcart*, 980 F.2d at 933).

Plaintiffs base their claims on several allegedly misleading statements of fact or omissions of fact in the Proxy Statement. To succeed on a Section 14(a) claim, the plaintiff must show that there was "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Moreover, "[t]he 'total mix' of information may also include 'information already in the public domain and facts known or reasonably available to the shareholders.'" *United Paperworkers Int'l Union v. International Paper Co.*, 985 F.2d 1190, 1199 (2nd Cir.1993) (citations omitted).

There also is no duty to disclose hypothetical future events. As the court stated in *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1024 (9th Cir.2000), "Section 14(a) and Rule 14a–9 do not obligate corporate officials to present, no matter how

unlikely every conceivable argument against their own recommendations." *See also In re Nice Sys., Ltd. Sec. Litig.*, 135 F.Supp.2d 551, 586 (D.N.J.2001) (" 'Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them' ") (citation omitted).

Plaintiffs' allegations regarding purported misstatements or omissions of fact in the Proxy Statement fall within the following categories: (1) Defendants' alleged failure to mention the sale of two refineries in 2000 by two other corporations prior to the announcement of the merger; (2) Defendants' alleged misstatements regarding "the decline in refining margins as measured by the Gulf Coast 20 day delayed WTI, 3/2/1 crack spread in December 2000,"; (3) the alleged failure "to include in the Proxy Statement that the settlement on January 17, 2001 of the five year labor dispute at the Pasadena refinery was a very positive development for the business of Crown" and alleged misleading statements regarding the termination of the Statoil contract; and (4) the alleged misstatement that Rosemore had no current plans or proposals which relate to or would result in any purchase, sale or transfer of a material amount of assets of Crown or any of its subsidiaries.

Plaintiffs allege that the Proxy Statement failed to disclose the sale of the two refineries by third parties in 2000. However, this statement clearly did not alter the total mix of information because nowhere have Plaintiffs alleged that these other refinery acquisitions were comparable to the Crown refineries. Without alleging some comparability, this information is of "dubious significance" and is immaterial as a matter of law. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 714 (3rd Cir.1996) (citation omitted). Plaintiffs cannot be permitted to allege fraud with-

out first alleging how the prices paid for the sold refineries are applicable to those owned by Crown.

■ Plaintiffs make a number of allegations regarding Defendants' alleged misstatements of refinery margins in December 2000 and omissions regarding refinery margins in January 2001. However, nowhere do Plaintiffs allege that the above statements inaccurately reflect the Gulf Coast 20 day delayed 3/2/1 crack spread for December 2000. These figures are accurate for December 2000, and, therefore, are neither false nor misleading.

Plaintiffs allege that Defendants should have stated that refinery margins were improving in *January* 2001. Defendants *did* disclose that beginning in late January 2000, Gulf Coast refining margins experienced *marked improvement* as compared to the same 1999 period.

Plaintiffs allege Crown used the "Gulf Coast 20 day delayed 3/2/1 crack spread" as the "industry benchmark" for indication of refining margins, and suggests that two other methodologies for refining margins should have been used. However, Plaintiffs do not allege that defendants failed to accurately relate the correct Gulf Coast 20 day delayed 3/2/1/ crack spread numbers. Just because Plaintiffs believe a different methodology should be used does not create an actionable Section 14(a) claim.

There also is no duty to disclose hypothetical future events. As the court stated in *Desaigoudar*, 223 F.3d at 1024: "Section 14(a) and Rule 14a–9 do not obligate corporate officials to present, no matter how unlikely, every conceivable argument against their own recommendations." *See also In re Nice Sys. Ltd.,* 135 F.Supp.2d at 586 ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them") (citation omitted).

■ Plaintiffs assert that Crown and the individual defendants failed to include in the Proxy Statement that the settlement on January 17, 2001 of the five year labor dispute at the Pasadena refinery was a very positive development for the business of Crown. Plaintiffs cite for the fact that the statements regarding the settlement of the labor dispute were misleading is a press release issued on March 7, 2001. This release was issued more than a month after the Proxy Statement had been issued, and Plaintiffs fail to specify the reason or reasons why statements regarding the settlement of the labor dispute in the Proxy Statement were false and misleading *at the time they were made. See* 15 U.S.C. § 78u–4(b)(1); *see also In re Harmonic, Inc.,* 163 F.Supp.2d at 1090. As the court stated in *In re Harmonic, Inc.:*

> The most direct way of explaining why a statement was false or misleading when made is to identify inconsistent contemporaneous statements or information, created by, or made available to, the defendants. A complaint may not demonstrate that a statement was false or misleading when made, however, "merely by pointing to later inconsistent statements or conditions."

163 F.Supp.2d at 1090 (citations omitted). Here, even assuming that the March 7, 2001 press release was "inconsistent" with the statements regarding the settlement of the labor dispute in the Proxy Statement, Plaintiffs' reliance on a later press release is insufficient to state a Section 14(a) claim.

■ Plaintiffs allege that the Proxy Statement was misleading because it "treated the termination of the Statoil agreement as a detriment to Crown, when in fact the termination of the Statoil agreement provided Crown with the *potential* for substantially increased profits from its refineries." Plaintiffs further allege that

the "Proxy Statement did not disclose the increased revenues that Crown could *expect* to receive after termination of the Statoil contract." However, under Section 14(a), the Defendants are "only responsible for revealing those material facts reasonably available to them." *In re Nice Sys., Ltd.*, 135 F.Supp.2d at 586. (citations omitted).

Plaintiffs allege that the Proxy Statement did not qualify the sales lost in 1999 and 2000 because of the Statoil contract even though such information was contained in Crown's SEC Form 10–K for 2000. The Proxy Statement included the 10–K for the period ended December 31, 1999 as Appendix B to the Proxy Statement. The 1999 Form 10–K expressly states that "1999 decreases in sales volumes are primarily due to the Company's crude oil based processing agreement executed in the fourth quarter of 1998 with Statoil Marketing and Trading (US) Inc. (Statoil)."

██ Plaintiffs complain that the Proxy Statement was misleading because it stated that Rosemore has no *current* plans or proposals which relate to or would result in any purchase, sale or transfer of a material amount of assets of Crown or any of it subsidiaries. In claiming this statement is misleading, Plaintiffs' again rely on an announcement that occurred more than six months after the Proxy Statement was issued. On August 11, 2001, the *Baltimore Sun* reported that Crown had engaged a financial advisor to *explore* the sale of its refineries and terminal assets.

However, the Proxy Statement discloses that CSFB proposed at the April 22, 1999 meeting of the Crown Board that Crown pursue the sale or merger of Crown as a whole or the sale of its refining and/or wholesale terminal assets, and at a meeting on January 18, 2000, CSFB reported that Crown had received an offer for the

purchase of Crown's two refineries and all Crown petroleum inventory.

In Count IV, Plaintiffs allege a breach of "fiduciary" duty under Maryland law against Crown's directors and Rosemore, and against CSFB for aiding and abetting these alleged breaches. Plaintiffs explicitly exclude allegations of fraudulent conduct from this claim. Plaintiffs have not amended this Count in any material respect from the first Complaint.

Defendants renew their arguments that it should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6). The Court in its previous ruling found the liability provision in the Crown's corporate charter to be an affirmative defense that could not be used to support a motion to dismiss. This ruling should be reconsidered.

Plaintiffs have not alleged that the Defendants have received an improper benefit or profit in money, property, or services and have engaged in active and deliberate dishonesty.

Crown's corporate charter precludes liability against the Crown Directors for money damages absent a showing that they received an improper benefit or profit in money, property or services or that the Crown Directors engaged in active and deliberate dishonesty that has been established by a final judgment.

Crown's corporate charter specifically limits liability of its directors for money damages in all cases except for actual receipt of an improper benefit or profit in money, property, or services or active and deliberate dishonesty established by a final judgment. Md.Code Ann., Cts. & Jud. Proc. § 5–418(a) (2001); *see also* Md.Code Ann., Corps. & Ass'ns § 2–405.2 (2001). Specifically, Crown's charter provides:

> Section 6.7. *Limitation Liability of Directors and Officers.* No person who is or formerly was a Director or Officer of

the Corporation shall have any liability to the Corporation or to any Stockholder for money damages in connection with any action, or failure to act, subsequent to February 18, 1988, in his or her capacity as a Director or Officer; provided, however, that nothing contained herein shall restrict or limit the liability of any person:

(a) to the extent that it is proved that such person actually received an improper benefit or profit in money, property or services, for the amount of the benefit or profit in money, property or services actually received; or

(b) to the extent that a judgment or other final adjudication adverse to such person in entered in a proceeding based on a finding in the proceeding that such person's action, or failure to act, was the result of active and deliberate dishonesty and was material to the cause of action adjudicated in the proceeding.

The case of *Knox v. Rosenberg*, No. H–99–0123, slip op. (S.D.Tex. Sept. 28, 1999), is directly on point. *Knox* involved a shareholder derivative suit against Crown and its board of directors. There, the court, in taking judicial notice of the *exact same charter at issue here*, dismissed the complaint, in part, because the charter provisions "specifically eliminate director liability to the corporation and shareholders absent self-dealing or 'active and deliberate dishonesty,' " *Knox*, slip op. at 17 (citation omitted), and the complaint did not allege that the directors received an improper benefit or profit or that their failure to act was the result of active and deliberate dishonesty. *Id.* at 19.

■ This Court finds that it is necessary for Plaintiffs to allege sufficient facts to state a claim under Maryland law. Plaintiffs have failed to plead facts suggesting either improper benefit or profit or active and deliberate dishonesty which would defeat application of the charter provision in the Second Amended Complaint. Plaintiffs continue explicitly to *disavow* that the directors engaged in fraud, and there is no allegation of active and deliberate dishonesty. Accordingly, Defendants are entitled to dismissal of this claim against them.

■ The Second Amended Complaint alleges that CSFB violated section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Rule 14a–9, 17 C.F.R. § 240.14a–9, by issuing its fairness opinion when it knew or should have known that the fairness opinion was false. These conclusory statements alone, are insufficient to establish a 14(a) claim based on a statement of opinion.

■ Plaintiffs failed to allege in the original Complaint that CSFB knew the fairness statement it put forth was false. To state a viable Section 14(a) claim against CSFB in the Second Amended Complaint, Plaintiffs must allege that CSFB knowingly issued a false fairness opinion. A conclusory statement to this effect, standing alone, is not sufficient to withstand a motion to dismiss. *See In re Criimi Mae. Inc. Sec. Litig.*, 94 F.Supp.2d 652, 659 (D.Md.2000). Since CSFB's state of mind is necessarily at issue, the PSLRA requires Plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). This heightened pleading standard " 'chang[es] what a plaintiff must plead in his complaint in order to survive a motion to dismiss,' " because the PSLRA "indisputably seeks to make pleading scienter more difficult for plaintiffs." *Phillips*, 190 F.3d at 620. Accordingly, Plaintiffs must allege specific facts sup-

porting a strong inference that CSFB intentionally issued a false fairness opinion.

Plaintiffs allege in Count Two of the Second Amended Complaint that CSFB knowingly issued a false fairness opinion. Such an allegation, standing alone, is " 'so broad and conclusory as to be meaningless,' " and cannot support a strong inference of intentional conduct, as required by the PSLRA. *In re Criimi Mae*, 94 F.Supp.2d at 659 (holding that plaintiff's allegation that defendants "knowingly or recklessly failed to disclose" material information was sufficient to satisfy PSLRA heightened pleading standard) (citation omitted).

This conclusory statement is the only difference between the 14(a) claim against CSFB that was dismissed by this Court in the original Complaint and the 14(a) claim asserted against CSFB in the Second Amended Complaint. Plaintiffs continue to specifically exclude from their Section 14(a) claim against CSFB any allegations that might invoke a claim or element of fraud.

Plaintiffs have not added any new factual allegations in the Second Amended Complaint that were not already considered insufficient to state a 14(a) claim against CSFB. In both complaints, Plaintiffs alleged that CSFB knew of certain recent refinery acquisitions indicating a rising trend of refinery values, yet did not include these acquisitions in its comparable transactions analysis or conduct an independent appraisal of Crown's assets. Similarly, Plaintiffs asserted in both complaints that CSFB had a motive to issue a false fairness opinion because of its business relationship with Crown and the fact that a significant part of its fee was contingent on the completion of the merger. CSFB disclosed that it had not performed an independent evaluation. *Cf. Maywalt v. Parker & Parsley Petroleum*

*Co.*, 808 F.Supp. 1037, 1057–58 (S.D.N.Y. 1992) (dismissing 10b–5 claim against financial advisor for failing to modify fairness opinion despite revaluation of certain assets, because financial advisor did not make representations concerning the valuation of assets and disclosed that it had not performed an asset valuation). Similarly, CSFB fully disclosed its ongoing business relationship with Crown and the contingent nature of its fee. *Cf. Schloss Assoc. v. C & O Ry. Co.*, 73 Md.App. 727, 536 A.2d 147, 157–58 (1988) (dismissing state law claim against financial advisor that issued fairness opinion where minority stockholders made no "detailed averment that the fee paid for [the investment bank's] work or its involvement with [one of the parties to the merger] adversely affected its exercise of independent judgment"); *see also In re Trex Co. Sec. Litig.*, 212 F.Supp.2d 596, 606–08 (W.D.Va.2002) (holding that allegation that defendant had a motive to commit fraud because of incentive compensation was insufficient to satisfy PSLRA state of mind pleading standard).

Under these circumstances, Plaintiffs' allegations that CSFB did not consider certain transactions or conduct a liquidation analysis and received a fee contingent on the completion of the merger simply do not raise a strong inference that CSFB intentionally issued a false fairness opinion.

It its Memorandum Opinion denying Rosemore's initial motion to dismiss, this Court held that Plaintiffs stated a cognizable claim against Rosemore under Maryland law for breach of fiduciary duty that Rosemore, as an alleged majority shareholder of Crown, owed to Plaintiffs, as minority shareholders of Crown. This Court finds that the prior ruling should be reconsidered. Maryland courts have recognized that, in certain defined circum-

stances, majority shareholders have a fiduciary obligation to minority shareholders not to use their power to act for their own benefit or for some ulterior purpose. *See, e.g., Pittman v. American Metal Forming Corp.*, 649 A.2d 356, 360 (Md.1994); *Toner v. Baltimore Envelope Co.*, 304 Md. 256, 498 A.2d 642, 647–48 (1985). *See also American Metal Forming Corp. v. Pittman*, 52 F.3d 504, 508 (4th Cir.1995). The Second Circuit has found Maryland law provides the fiduciary duties owed minority shareholders by majority shareholders are actionable, and may be enforced through direct claims. *Strougo v. Bassini*, 282 F.3d 162, 173 (2nd Cir.2002).

Plaintiffs allege in ¶ 70 of the Second Amended Complaint, there were two classes of Crown common stock with voting rights on the merger transaction, Class A (entitled to one vote per share) and Class B (entitled to one tenth of a vote.) "As of record date, January 17, 2000, Crown had 4,817,394 shares of Class A common stock and 5,248,312 shares of Class B common stock outstanding." Of those two classes of Crown common stock, Rosemore, through its wholly owned subsidiary, Rosemore Holdings, beneficially owned 2,366,526 shares of Class A and 591,629 shares of Class B common stock or approximately 49% and 11% respectively. Rosemore through a wholly owned subsidiary, at all times relevant hereto, owned approximately 49% of the Crown Class A common stock and approximately 11% of the Crown Class B common stock. Adding the two classes of Crown common stock together, Rosemore owned 2,958,155 shares, or approximately 29%, of the 10,065,706 shares Crown Class A and Class B common stock.

No Maryland court has held that one minority shareholder, such as Rosemore, owes a fiduciary duty to other minority shareholders, such as Plaintiffs, and that it is also the law elsewhere. *See, e.g., Priddy v. Edelman*, 883 F.2d 438, 445 (6th Cir.1989) ("[m]inority shareholders owe no fiduciary duty to fellow shareholders") (applying Delaware law); *Osofsky v. J. Ray McDermott & Co., Inc.*, 725 F.2d 1057, 1060 (2nd Cir.1984) (49% shareholder did not owe fiduciary duty to other shareholders) (applying federal common law).

■ When Rosemore moved to dismiss Plaintiffs' original breach of fiduciary duty claim against it, Plaintiffs pointed out that Rosemore had a contract with another shareholder, The Novelly Group, pursuant to which The Novelly Group agreed to join with Rosemore in voting its shares in favor of the merger transaction. Relying upon *Baker v. Standard Lime & Stone Co.*, 203 Md. 270, 100 A.2d 822 (1953), Plaintiffs argued that the combined voting power of Rosemore and The Novelly Group constituted a majority of the votes eligible to be cast on the merger, and that, as a result, Rosemore should be treated as if it were a majority shareholder that owed a fiduciary duty to Plaintiffs.

However, in *Baker* the Maryland Court of Appeals simply noted, in *dicta*, "that an equity court may set aside a transaction whereby *majority* stockholders use their voting power for their own benefit, for some ulterior purpose adverse to the interests of the corporation and its stockholders as such." 100 A.2d at 829. Here, neither Rosemore nor The Novelly Group was a majority shareholder, and The Novelly Group is not a named defendant in this case.

Moreover, Rosemore could not control the outcome of the vote on the merger even with the votes of The Novelly Group. Although, under Maryland law and Crown's charter, the merger had to be approved by the affirmative vote of 2/3 of all the votes eligible to be cast on the matter, the merger agreement between

Rosemore and Crown required that the merger be approved by a majority of the votes cast on the matter other than by stock owned by Rosemore and its affiliates. Rosemore could not and did not control the outcome of the vote on the merger with Crown, and Rosemore cannot be treated as anything more than a minority shareholder. Thus, the Plaintiffs failed to state a claim for breach of fiduciary duty.

Count V seeks to hold Rosemore and Henry A. Rosenberg, Jr. liable as controlling persons under Section 20(a) of the Securities Exchange Act of 1934 because they had the authority to cause changes in Crown's business practices in general, to block any transactions which they did not wish for Crown to enter into and to authorize all aspects which led to Crown's issuance of the false and misleading proxy statement. Count V fails to state a claim because Plaintiffs have not alleged a primary violation of Section 14(a), and therefore Plaintiffs have failed to allege a violation of Section 20(a) as controlling persons. Section 20(a) provides for secondary liability based upon a primary violation of 14(a) by one deemed to be a controlling person. *See In re Harmonic Inc.*, 163 F.Supp.2d at 1086.

For these reasons, Defendants' motion to Dismiss should be granted.

An appropriate order shall issue.

### ORDER

This matter comes before the Court on the Defendants' motions to dismiss. For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that the Defendants' motions are GRANTED and this case is DISMISSED.