**Greg SEINFELD, Plaintiff–Appellant,**

v.

**Carol BARTZ; John T. Chambers; Mary Cirillo; James F. Gibbons; Edward Kozel; James C. Morgan, Jaohn P. Morgridge; Donald Valentine; Steven M. West; Cisco Systems, Inc., Defendants–Appellees.**

No. 02–15498.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2002.

Filed March 7, 2003.

A. Arnold Gershon, New York, NY, for the plaintiff-appellant.

Kevin P. Muck, Clifford Chance Rogers & Wells, San Francisco, CA, for the defendants-appellees.

Before: BRUNETTI and TASHIMA, Circuit Judges, and EZRA, District Judge.*

TASHIMA, Circuit Judge:

Plaintiff–Appellant Greg Seinfeld appeals an order of the district court dismissing his action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Seinfeld, a shareholder of Cisco Systems, Inc., filed a derivative action against Appellees, the company and its board of directors. In his complaint, Seinfeld alleged that Appellees violated § 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), and Rule 14a–9, 17 C.F.R. § 240.14a–9, by issuing a proxy statement that violated the proxy rules of the Securities and Exchange Commission ("SEC").

Specifically, Seinfeld contends that the proxy statement should have included the value of stock options granted to outside (non-employee) directors. The district court dismissed the complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Seinfeld has been a stockholder of Cisco since August 20, 1998. In 1999, the board of directors sought to amend Cisco's Automatic Option Grant Program for outside directors, which is part of the company's 1996 Stock Incentive Plan. As the district court summarized it:

> The amendment, which was approved by shareholder vote at the November 1999 annual meeting, raised the number of stock options granted to outside directors upon joining the board from 20,000 shares to 30,000 shares. Additionally, the amendment raised the number of options granted annually to each continuing outside director from 10,000 shares to 15,000 shares.

Appellees prepared a proxy statement dated September 27, 1999, in which they solicited the company's stockholders' proxies for approval of the amendment.

Seinfeld filed a complaint in the United States District Court for the Southern District of New York,[1] alleging that the proxy statement contained "materially false and misleading statements and omit[ted] material facts," in violation of SEC proxy rules. He contended that the proxy statement should have included the value of the option grants based on the Black–Scholes option pricing model, a model allegedly

---

* The Honorable David Alan Ezra, Chief United States District Judge for the District of Hawaii, sitting by designation.

1. The district court in New York granted Appellees' motion to transfer the case to the Northern District of California, where the events at issue took place, and where Cisco's headquarters and nearly all the witnesses, evidence, and defendants are located.

used by Cisco in its annual financial statements and used by the Financial Accounting Standards Board ("FASB"), the SEC, and the Internal Revenue Service ("IRS"). According to the complaint, the Black–Scholes model "measures the cost to the grantor to grant the stock option, ... commonly referred to as the fair value or the Black–Scholes value of the option," relying on values such as "the volatility of the underlying stock, the risk-free rate of interest, the expiry of the option, the dividends on the underlying stock, the exercise price of the option, and the market price of the underlying stock." According to Seinfeld's calculations, the value of the annual stock option granted to each director on September 27, 1999, the date of the proxy statement, was $1,020,600, and the value on November 10, 1999, the date of the grant, was $630,900. The proxy statement stated that each director was paid an annual retainer of $32,000, plus stock options. Seinfeld alleged that this statement was materially false and misleading because, according to his calculations, the directors actually received annual compensation of $410,500.

Seinfeld also challenged a representation in the proxy statement that, " '[u]nless the market price of the Common Stock appreciates over the option term, no value will be realized from the option grants made to the executive officers.' " Seinfeld alleged that this statement was materially false and misleading because "the grant of stock options results in the immediate realization of value," which is best determined under the Black–Scholes model. Seinfeld further alleged that the proxy statement's representation of the tax consequences of the option grant was false because it failed to explain that stock options are taxable for federal estate tax, gift tax, and generation-skipping transfer tax purposes and are valued using the Black–Scholes model.

The district court held that the Black–Scholes valuations of the option grants are not material facts that were required to have been contained in the proxy statement. The court further rejected Seinfeld's allegation that the proxy statement was misleading because it failed to disclose all federal tax consequences of the options. It therefore dismissed the complaint with prejudice in its entirety, pursuant to Rule 12(b)(6).

## STANDARD OF REVIEW

The district court's dismissal under Rule 12(b)(6) for failure to state a claim is subject to de novo review. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 (9th Cir.2002). In reviewing a motion to dismiss, we must "take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff." *Desaigoudar v. Meyercord,* 223 F.3d 1020, 1021 (9th Cir.2000), *cert. denied,* 532 U.S. 1021, 121 S.Ct. 1962, 149 L.Ed.2d 757 (2001).

## DISCUSSION

 Section 14(a) of the Exchange Act makes it unlawful to solicit a proxy "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a). Rule 14a–9 prohibits the solicitation of a proxy by means of a proxy statement that contains a statement that "is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9(a). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct.

2126, 48 L.Ed.2d 757 (1976). "In addition, a Section 14(a), Rule 14a–9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction." *Desaigoudar*, 223 F.3d at 1022 (footnote and citation omitted).

■ The essence of Seinfeld's complaint is that the proxy statement was misleading because it did not include the Black–Scholes valuation of the options granted to the non-employee directors. He makes several different arguments in advocating the use of Black–Scholes. We conclude that SEC regulations do not require the use of the Black–Scholes valuation and that the proxy statement is not materially false and misleading. In so holding, we agree with the Second Circuit, which faced the same issue in *Resnik v. Swartz*, 303 F.3d 147 (2d Cir.2002).

Seinfeld's first argument is that the district court erred in relying on four lower court cases to reject the use of the Black–Scholes valuation model because this is inconsistent with our "holding" in *Custom Chrome, Inc. v. Comm'r*, 217 F.3d 1117 (9th Cir.2000), that Black–Scholes is reliable. We reject this argument because, not only is *Custom Chrome* inapposite, but this was not even a holding in *Custom Chrome*.

The issue in *Custom Chrome* was the value, for federal income tax purposes, of warrants, which are, "in essence, options," that were issued in connection with a loan transaction. *Id.* at 1120. In that case, we were required to determine, under the Internal Revenue Code, when the warrants should be valued and what their value should be for original issue discount

("OID") purposes.[2] *Id.* at 1121–23. We stated in a footnote that Black–Scholes is one of several "well-established and reliable methods" of valuing options for OID purposes. *Id.* at 1124 n. 10. The issue was the value of warrants for OID purposes in the federal income tax context. *Custom Chrome* in no way endorses the use of Black–Scholes to value options granted to outside directors, and it certainly does not require the use of Black–Scholes to value options for purposes of a proxy statement. Its reasoning simply is inapposite to the issue presented here.

Seinfeld's second approach is to rely on FASB Statement No. 123, *Accounting for Stock–Based Compensation*, to argue that Black–Scholes is a reliable pricing model. FASB Statement No. 123 deals with the reporting of employee stock options in a company's financial statements for purposes of "arriving at reported earnings." *FASB's Plans Regarding the Accounting for Employee Stock Options* (July 31, 2002), *available at http:// www.fasb.org/news/nr073102.shtml.* "There are salient differences, however, between financial statement disclosure of an estimated value of stock options under a plan and disclosure for the purpose of shareholder ratification of adoption of the plan." *Lewis v. Vogelstein*, 699 A.2d 327, 332 (Del.Ch.1997); *see also Resnik*, 303 F.3d at 153 (stating that FASB Statement No. 123 recommends recognizing "options' grant-date value as part of compensation expense" in financial statements but "does not purport to address the requirements for reporting proposed compensation in a proxy statement"). FASB Statement No. 123 is not pertinent.

■ Seinfeld also contends that director compensation is a material fact required to

---

**2.** "When a loan is provided at a face value higher than the amount actually loaned, the debtor is allowed to deduct the difference over the life of the loan as [OID], while the creditor realizes the OID as ordinary income." *Custom Chrome*, 217 F.3d at 1121.

be disclosed under § 14(a) and that the proxy statement fails to comply with SEC regulation disclosure standards. These contentions fail. First, the proxy statement did disclose director compensation.

Second, the proxy statement does comply with SEC regulation disclosure standards. Item 8 of Schedule 14A, 17 C.F.R. § 240.14a–101, dealing with the compensation of directors and executive officers, requires a proxy statement to furnish the information required by Item 402 of Regulation S–K, 17 C.F.R. § 229.402, if action is to be taken with regard to a compensation plan. Item 402(g) addresses the compensation of directors and requires the disclosure of compensation amounts, "including amounts payable for committee participation or special assignments," and "any other arrangements pursuant to which any director of the registrant was compensated." 17 C.F.R. § 229.402(g). As in *Resnik*, "[t]he description of the directors' standard fees and the options proposed to be awarded, as disclosed in the proxy statement . . ., plainly meets this basic requirement." 303 F.3d at 152. The proxy statement thus complies with SEC regulation disclosure standards.

Moreover, contrary to Seinfeld's contention, "neither subsection (g), nor any other provision of Item 402 expressly requires disclosure of the grant-date value of stock options proposed to be provided to the directors." *Id.* The court in *Resnik* compared subsection (g) with subsection (c) of Item 402, which requires the disclosure of the value of options granted to certain executive officers and specifically states that Black–Scholes is one possible way of calculating the value of the grant on the grant-date. *Id.; see* 17 C.F.R. § 229.402(c). "The absence of any mention of option values or of valuation methods from subsection (g), Compensation of Directors, is persuasive evidence that the Commission

did not intend subsection (g) to require disclosure of grant-date value calculation for the options proposed to be awarded to non-employee directors." *Resnik,* 303 F.3d at 152.

Seinfeld contends that the regulations are only minimum disclosure standards and that compliance with the regulations does not necessarily guarantee compliance with Rule 14a–9. He relies on *Zell v. InterCapital Income Sec., Inc.,* 675 F.2d 1041 (9th Cir.1982), in which we stated that " 'Schedule 14A sets minimum disclosure standards. Compliance with this schedule does not necessarily guarantee that a proxy statement satisfied Rule 14a–9.' " *Id.* at 1044 (quoting *Maldonado v. Flynn,* 597 F.2d 789, 796 n. 9 (2d Cir. 1979)).

In support of his argument, Seinfeld repeats the allegations of his complaint that the following representation in the proxy statement was materially false and misleading: "Unless the market price of the Common Stock appreciates over the option term, no value will be realized from the option grants made to the executive officers." Seinfeld's only argument that this is false and misleading, however, is that, according to FASB Statement No. 123, the options are best evaluated by the use of Black–Scholes. As discussed above, this FASB statement concerns financial statements, not proxy statements, and is not relevant to the issue presented here.

More importantly, the statement Seinfeld challenges is contained in a footnote to a table that lists option grants made in the last fiscal year to executive officers of the company, as required by Item 402(c), 17 C.F.R. § 229.402(c). Option grants that have already been made to executive officers are completely unrelated to the amendments to the plan Seinfeld is challenging, which concerned options proposed to be granted to outside directors. *Cf.*

*Resnik,* 303 F.3d at 153–54 (rejecting a challenge to a similar statement, in part because, as here, the statement was contained in a footnote to a table describing options already granted to executives who were not covered by the plan at issue).

The facts of *Zell* are quite different from those presented here. In *Zell,* the plaintiffs charged the defendants, an investment fund, the investment manager, and the parent organization, with violations of § 14(a) and Rule 14a–9 by failing to disclose material information in two proxy statements. The proxy statements recommended approval of an agreement between the fund and a subsidiary of the parent, based in part on the parent's responsible management, financial strength, and investment skills. The proxy statements, however, failed to disclose that there were numerous lawsuits pending against the parent and the subsidiary charging violations of state and federal securities laws. We concluded that "it cannot be said that the omitted information was so obviously unimportant that no reasonable Fund stockholders would consider it of actual significance in determining whether to approve" the agreement and therefore reversed the district court's grant of summary judgment in favor of the defendants. *Id.* at 1049. In finding the omitted information material, we reasoned that the proxy statements expressly relied on the corporations' financial stability and quality of management, that prior breaches of fiduciary duties or violations of securities laws "may have a direct bearing on managerial integrity," and that "[l]itigation involving substantial exposure to damages may affect a corporation's financial status." *Id.* at 1045–46.

The instant case does not present facts as compelling as those in *Zell.* In fact, the statement Seinfeld challenges as misleading is accurate; that is, the option grants

made to the executive officers do not have value if the market price of the shares does not appreciate over the option term. *Cf. Resnik,* 303 F.3d at 154 (stating that a somewhat similar statement "accurately describes how value is realized when options are actually exercised").

■ Finally, Seinfeld contends that the proxy statement was misleading because it did not disclose federal estate, gift, and generation-skipping transfer tax consequences of the option grants. He argues that the IRS uses Black–Scholes to value stock options, citing in his complaint Rev. Rul. 98–21, 1998–1 C.B. 975, and Rev. Proc. 98–34, 1998–1 C.B. 983. The IRS publications to which Seinfeld refers deal with the valuation of stock options for federal transfer tax purposes; they have nothing to do with the valuation of options for purposes of disclosures in a proxy statement. *See* Rev. Rul. 98–21 (describing the issue as the time that "the transfer of a nonstatutory stock option ... by the optionee to a family member, for no consideration" becomes a "completed gift" under the Internal Revenue Code); Rev. Proc. 98–34 § 3 ("This revenue procedure applies only to the valuation for transfer tax purposes of nonpublicly traded compensatory stock options ...."). Seinfeld cites no law or SEC regulation that requires the disclosure in a proxy statement of federal transfer tax consequences of option grants to outside directors. Nor does he explain how the failure to discuss federal transfer tax consequences was a material omission. As the district court also reasoned, Appellees have not "falsely stated that the options have no consequences under these three tax schemes."

## CONCLUSION

Even if we take all of the well-pleaded allegations of material fact as true and construe them in the light most favorable

to Seinfeld, *see Desaigoudar,* 223 F.3d at 1021, he has not shown that the proxy statement made materially false or misleading statements or contained any material omission. The proxy statement complies with SEC regulations. "If appellant believes that Black–Scholes value disclosure should be mandatory whenever shareholders' approval is sought for a proposed option grant [to outside directors], his remedy is to advocate a change in the regulations before the [SEC]." *Resnik,* 303 F.3d at 155; *cf.* Rob Norton, *The Cure for Lavish Pay? Shame It to Death,* Wash. Post, Sept. 29, 2002, at B1, *available at* 2002 WL 101064666 (suggesting that the SEC could enact tougher standards for disclosure of corporate pay).

The judgment of the district court is

**AFFIRMED.**[3]

---

**3.** Appellees argue that Seinfeld's complaint fails to meet the pleading requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b). We do not address this argument because, even "assum[ing] for purposes of this appeal that[Seinfeld's] pleadings are sufficient under the Act's requirements ... the underlying facts cannot establish liability under Rule 14a–9, a conclusion that would not be altered by more detailed pleading." *Minzer v. Keegan,* 218 F.3d 144, 148 n. 1 (2d Cir.2000), *cert. denied,* 531 U.S. 1192, 121 S.Ct. 1190, 149 L.Ed.2d 106 (2001).