

Villanova University School of Law

Opinions of the United
States Court of Appeals
for the Third Circuit

2003 Decisions

9-12-2003

# Worldcom Inc v. Graphnet Inc

Precedential or Non-Precedential: Precedential

Docket No. 02-4256

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

## Recommended Citation

"Worldcom Inc v. Graphnet Inc" (2003). *2003 Decisions*. Paper 234.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/234

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 12, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4256

WORLDCOM, INC.,

Appellant

v.

GRAPHNET, INC.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY
(District Court Civil No. 00-cv-05255)
District Court Judge: Hon. William H. Walls

Argued and Submitted
June 16, 2003

Before: ALITO, ROTH, and HALL,* *Circuit Judges.*

(Opinion Filed: September 12, 2003)

> Patrick C. Dunican, Jr., Esq.
>  (Argued)
> One Riverfront Plaza
> Gibbons, Del Deo, Dolan, Griffinger
>  & Vecchione, P.C.
> Newark, New Jersey 07102
>
> Counsel for Appellant

---

* The Hon. Cynthia Holcomb Hall, Circuit Judge for the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

Francis L. Young, Esq. (Argued)
Law Offices of Francis L. Young,
 Esq.
126 C. Street, N.W.
Washington, DC 20001

Marc J. Gross, Esq.
Gina M. Pontorieo, Esq.
Greenbaum, Rowe, Smith, Ravin,
 Davis & Himmel, LLP
6 Becker Farm Road
Roseland, New Jersey 07068

Counsel for Appellee

## OPINION OF THE COURT

CYNTHIA HOLCOMB HALL, Circuit Judge:

Worldcom, Inc. appeals an order of the district court dismissing its complaint against Graphnet, Inc. Worldcom claims Graphnet owes it approximately 3.4 million dollars for telecommunications services and equipment. The district court held that since the contracts at issue in this controversy were not filed with the Federal Communications Commission (FCC), Worldcom is precluded from recovering anything for services or equipment provided to Graphnet. It therefore dismissed Worldcom's complaint for failing to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the district court erred by concluding that Worldcom cannot recover as a matter of law, we REVERSE and REMAND for further proceedings.

### FACTS AND PROCEDURAL HISTORY

Worldcom is a global telecommunications company providing a variety of diverse communications services in local, national and international markets.[1] Graphnet

---

1. Worldcom filed for chapter 11 bankruptcy protection in the Southern District of New York, after this action commenced. Subsequent to its

provides communications services and network products for customers in national and international markets.

On June 2, 2000, Worldcom commenced an action under the Federal Communications Act, 47 U.S.C. § 151 et seq., against Graphnet for breach of contract and unjust enrichment in federal district court in the Eastern District of Virginia. The complaint was thereafter amended on August 28, 2000. Graphnet moved to transfer venue to the District of New Jersey. In its complaint, Worldcom claims that, in November 1991, it entered into a contract with Graphnet to provide two-way telex transmissions between their respective networks for telex traffic originating on each other's networks. Graphnet has not paid for over three million dollars in telex services provided to it by Worldcom. It has also failed to pay for over three hundred thousand dollars for additional telecommunications equipment and services provided pursuant to another contract. Neither contract was filed with the FCC. The extent to which Graphnet disputes these allegations is unclear since Graphnet never filed a responsive pleading admitting or denying these allegations.

In October 2000, the district court in Virginia transferred the action to the District of New Jersey. Upon transfer, Graphnet moved to dismiss the complaint under Fed. R. Civ. P. 12(b). Graphnet argued that the district court lacked subject matter jurisdiction and that Worldcom failed to state a claim upon which relief could be granted. Graphnet also raised two affirmative defenses in its motion to dismiss, claiming that Worldcom's actions were barred both by the applicable statute of limitations and by an earlier settlement agreement. In its reply brief in support of its motion to dismiss, Graphnet argued for the first time that Worldcom's claims were precluded by the so-called "filed rate doctrine." Worldcom objected to the issue being raised for the first time in Graphnet's reply brief and the district court properly allowed Worldcom to file a sur-reply brief to respond to Graphnet's arguments.

filing for bankruptcy protection, Worldcom informed the district court that it would continue pursuing this action as an attempt to recover funds owed to the debtor's estate.

The district court filed an opinion and order granting Graphnet's motion to dismiss. The district court held that it had subject matter jurisdiction but concluded that Worldcom could not recover under any of the contracts at issue because they were never filed with the FCC. The district court did not reach any of the other issues raised by Graphnet in its motion to dismiss. Worldcom appealed.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is reviewed *de novo*. We accept all well pleaded factual allegations as true and draw all reasonable inferences from such allegations in favor of the complainant. *Weston v. Pennsylvania*, 251 F.3d 420, 425 (3d Cir. 2001). Dismissal for failure to state a claim is appropriate only if it "appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## DISCUSSION

### A.  Jurisdiction

After Graphnet moved to dismiss the action for lack of subject matter jurisdiction, the district court held that it had jurisdiction over the controversy. While Graphnet does not dispute this finding, we are nevertheless obligated to raise and decide the issue *sua sponte. See MCI Telecomm. Corp. v. Teleconcepts, Inc.* 71 F.3d 1086, 1093 (3d Cir. 1995).

After examining the record, we have no doubt that the district court correctly found that it had diversity jurisdiction under 28 U.S.C. § 1332. The parties are completely diverse and the matter in controversy exceeds $75,000. We also note that there is federal question jurisdiction under 28 U.S.C. § 1331. Because this issue is related to the merits of this controversy, we will discuss it briefly. In *MCI Telecomm.*, we held that a contract action for unpaid services under the terms and conditions set forth in a filed tariff "arises under" the laws of the United States. *MCI Telecomm.*, 71 F.3d at 1094. In *MCI Telecomm.*, we

relied heavily on the Second Circuit's decision in *Ivy Broadcasting Co., Inc. v. AT & T*, 391 F.2d 486 (2d Cir. 1968). In *Ivy Broadcasting*, the court noted that "the establishment of [a] broad scheme for the regulation of interstate service by communications carriers indicates an intent on the part of Congress to occupy the field to the exclusion of state law." *Id.* at 490. Since Congress intended to occupy the field, "questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law[.]" *Id.* at 491. Since this controversy involves questions concerning the duties, charges and liabilities with respect to interstate and international communications services, it "arises under" federal law. 28 U.S.C. § 1331. Since no specific portion of the Act creates an action for breach of a communications contract, the district court must apply federal common law.

## B. Whether Worldcom Was Required to File the Contracts at Issue

The district court erred by concluding that Worldcom was required to file the contracts at issue. This complex issue could not be resolved at this stage in the litigation. The fact that there was no filed tariff does not itself violate the FCA. Under the FCA, a carrier may conduct its business either by tariff or by contract. *Bell Tel. Co. of Pa. v. FCC*, 503 F.2d 1250, 1277 (3d Cir. 1974). When a carrier chooses to conduct business by contract, section 211(a) of the FCA states that every common carrier "shall" file with the FCC "copies of *all* contracts, agreements or arrangements with other common carriers." 47 U.S.C. § 211(a) (emphasis added). The district court held that since the contracts at issue were not filed with the FCC, Worldcom had violated the FCA. The district court, however, ignored section 211(b) which states, in relevant part, that the FCC "shall have the authority to require the filing of any other contracts of any carrier, and *shall also have authority to exempt any carrier from submitting copies of such minor contracts as the Commission may determine.*" 47 U.S.C. § 211(b) (emphasis added). The plain language of the statute gives the FCC the power to exempt certain contracts from the filing requirement of section 211(a).

Pursuant to this authority, the FCC promulgated 47 C.F.R. § 43.51 which stated in relevant part, at the time of contracting:

> (a) Any communications common carrier engaged in domestic or foreign communication, or both, which has not been classified as non-dominant pursuant to Section 61.12(e) of the Commission's Rules, 47 C.F.R. § 61.12(e), is not treated under the regulatory forbearance policies established by the Commission, and which enters into a contract with another carrier must file with the Commission, within thirty (30) days of execution, a copy of each contract, agreement, concession, license, authorization or other arrangement to which it is a party . . .

47 C.F.R. § 43.51(a) (1986) (available in 1 FCC Rcd 933). Worldcom argues that this language exempts non-dominant carriers from the filing requirement. Graphnet argues that this regulation merely lists a few examples of contracts that must be filed with the FCC. The FCC's report and order regarding the amendment to 47 C.F.R. § 43.51 clearly supports Worldcom's position. In that order, the FCC specifically stated that because it no longer found such documents "useful," it desired to eliminate "the requirement that non-dominant carriers treated with forbearance file certain reports and contracts." 1 FCC Rcd 933, ¶ 3 (1986). Furthermore, the language in the regulation would be superfluous were it not read to exempt non-dominant carriers from the filing requirement. We therefore agree with Worldcom that this regulation exempts "non-dominant" carriers from the filing requirement.

Worldcom specifically claims that it was classified as non-dominant and subject to regulatory forbearance with respect to its domestic long-distance operations at the time the contract was signed. It therefore cannot be resolved at this point in the litigation whether the contracts at issue were required to be filed with the FCC. The court must first determine whether Worldcom was, in fact, non-dominant in the national long distance field at the time and that the contracts at issue involved national long distance services.

Graphnet's claim that 47 C.F.R. § 43.51 does not apply to this case because the relevant language of the regulation

was not adopted until October 12, 2000, is simply false. This specific regulation has exempted non-dominant carriers *since 1986*. 1 FCC Rcd 933, ¶ 3 (1986). Not only would proper legal research have revealed this, but a declaration attached to Worldcom's sur-reply brief in district court quoted the 1986 language and clearly explained that the relevant language was adopted in 1986.

We conclude that the district court erred by finding that Worldcom was required to file the contracts at issue. At this stage in the litigation, it cannot be determined that Worldcom was so required.

## C. Whether Worldcom Could Recover Even if It Were Required to File

Graphnet argues that a violation of the filing requirement precludes Worldcom from recovering anything for services it rendered and equipment it delivered to Graphnet. The district court adopted Graphnet's position holding that Worldcom could neither recover under the contract nor for the value of services rendered under a theory of unjust enrichment or *quantum meruit*. Essentially, the district court held that if a party fails to file a contract under section 211, it will suffer a complete and total forfeiture. It erroneously relied on the inapposite "filed rate doctrine" in reaching this conclusion. We find nothing in either the FCA, the decisions of the Common Carrier Bureau or in the caselaw from the federal courts that would support such an extreme penalty for failing to file a contract. In fact, relevant authority is to the contrary.

As an initial matter, section 211 says nothing about *any* penalty for failing to file a contract. Other sections of the FCA, however, specifically lay out penalties for violation of their provisions. *See, e.g.*, 47 U.S.C. § § 202(c), 203(e) and 205(b). Yet the district court and Graphnet assume that the penalty for failing to file a contract under that section is a total forfeiture. If Congress intended the extraordinary penalty that Graphnet advocates, we would expect it to say so explicitly. "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939). *See also Farmers' & Mechanics'*

*Nat'l Bank v. Dearing*, 91 U.S. 29, 35 (1875) ("When either of two constructions can be given to a statute, and one of them involves a forfeiture, the other is to be preferred.") (internal citations omitted). Absent an express statutory statement to the contrary, we conclude that a violation of section 211's filing requirement does not require that Worldcom forfeit any right to be compensated for services and equipment provided to Graphnet pursuant to an unfiled contract.

Moreover, the filed rate doctrine is inapposite. Section 203 of the FCA states that all common carriers "shall" file "schedules," i.e. tariffs, "showing all charges" and "showing the classifications, practices, and regulations affecting such charges" with the FCC. 47 U.S.C. § 203(a). Deviation from these rates "is not permitted upon any pretext." *Id.* These provisions are modeled after similar provisions in the Interstate Commerce Act and embody "the century old 'filed rate doctrine.'" *AT&T Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 222 (1998). The filed rate doctrine forbids charging or collecting rates for services that vary with the rates scheduled for those services in a filed tariff. Even if a carrier intentionally misrepresents its rates and contracts with a customer who relies on those rates, the carrier cannot be held to the contracted rate if it conflicts with the filed tariff. *Id.* at 222.

Here, however, no filed tariff appears to have covered the services provided pursuant to the contracts at issue. The doctrine is therefore inapposite because there is no filed tariff with which the contracts conflict.[2] *See id.* at 229 (Rehnquist, C.J., concurring) ("In order for the filed rate doctrine to serve its purpose . . . it need pre-empt *only* those suits that seek to alter the terms and conditions provided for in the tariff.") (emphasis added). "While the filed rate doctrine may seem harsh in some circumstances,"

---

2. We assume for purposes of this appeal that there is no filed tariff because there is no indication to the contrary. Nothing in this decision should be read to preclude Graphnet from later offering evidence that some or all services provided to it were pursuant to a filed tariff. The contracts would be unenforceable to the extent they conflicted with a filed tariff.

*id.* at 223, it does not result in the extraordinarily harsh result that Graphnet advocates. It may serve to give a carrier or customer an unjustified windfall but it rarely results in a total forfeiture of a party's rights to either be compensated or provided with services. The carrier is still compensated, even if it is at a rate lower than the rate for which the carrier thought it bargained. The customer is still provided with services even if it has to pay a higher rate for those services than it expected.

We find support for our conclusion in the decisions of the FCC and the Common Carrier Bureau. In *New Valley Corp. v. Pacific Bell*, 15 FCC Rcd 5128 (FCC 2000), the FCC addressed and squarely rejected an argument similar to the one made by Graphnet here. New Valley argued that it was under no obligation to pay for services rendered by Pacific Bell because there was no filed tariff covering the services it had received from Pacific Bell. *Id.* at ¶¶ 9-10. The FCC rejected this argument outright and upheld the finding of the Common Carrier Bureau that there was "no basis" in the filed rate doctrine "that a customer may be exempt from paying for services provided by a carrier if those services were not properly encompassed by the carrier's tariff." *In the Matter of New Valley Corp. v. Pacific Bell*, 8 FCC Rcd 8126, ¶ 8 (Com. Car. Bur. 1993). *See also In the Matter of America's Choice, Inc. v. LCI Internat'l Telecom Corp.*, 11 FCC Rcd 22,494, ¶ 24 (Com. Car. Bur. 1996) ("[A] purchaser of telecommunications services is not absolved from paying for services rendered solely because the services furnished were not properly tariffed.").

If Worldcom was required to file the contracts at issue, its failure to do so would not by itself preclude Worldcom from recovering under those contracts. If the contracts are not enforceable for some other reason, Worldcom could still recover the value of its services under a theory of unjust enrichment. The district court erred by concluding otherwise. If Graphnet has been damaged by the failure to file the contracts at issue or by any other possible breaches of duty by Worldcom, it may file a counterclaim under 47 U.S.C. § 207 and seek appropriate relief from the district court.

### D. Graphnet's Remaining Claims in Its Motion to Dismiss

We decline Worldcom's invitation to instruct the district court to rule against Graphnet on the remainder of the issues raised in its motion to dismiss. It is the district court's duty to decide the outstanding issues in the first instance.

To the extent that Graphnet requests that we affirm the district court's dismissal of this action with prejudice on alternative grounds, we see nothing in the record that would give us a basis for doing so. *See Fairview Township v. EPA*, 773 F.2d 517, 525 n.15 (3d Cir. 1985) (this court may affirm the district court on any basis finding support in the record). Graphnet does not dispute that Worldcom has adequately pleaded its claims regarding the first contract. It does argue, however, that the claims regarding the second contract were not adequately pleaded. We leave it to the district court to decide this issue. Even if the district court does conclude that the claims were not adequately pleaded, Worldcom may still be able to amend its complaint to adequately plead the claims. Graphnet's argument in district court for why these claims should be dismissed with prejudice is without merit. Graphnet claimed in district court that Worldcom has failed to plead the claims regarding this contract three times and has therefore had "three bites at the apple" and should not be given another.[3] Graphnet does not correctly represent the record. Worldcom has unsuccessfully pleaded claims regarding the second agreement only *once*. The district court in Virginia dismissed the claim without prejudice. Worldcom thereafter amended its complaint. The action was then transferred to New Jersey. The district court in New Jersey has never ruled on the issue.

---

3. The fact that a complainant has had "three bites at the apple" is not itself a justification for dismissing a complaint with prejudice. *See* Fed. R. Civ. P. 15(a); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (Reinhardt, J., concurring separately) ("the undeservedly common 'three bites at the apple' cliche . . . too often provide[s] a substitute for reasoned analysis").

Graphnet's motion to dismiss also raised two affirmative defenses. Graphnet asserted that Worldcom's action was barred both by an earlier settlement agreement and by the applicable statute of limitations. The facts necessary to establish an affirmative defense must generally come from matters outside of the complaint. Thus, with some exceptions, affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b). *See Robinson v. Johnson*, 313 F.3d 128, 135 (3rd Cir. 2003) (limitations defense may be raised on a motion under Rule 12(b)(6) "*only* if the time alleged *in the statement of a claim* shows that the cause of action has not been brought within the statute of limitations") (emphasis added) (internal citations and quotations omitted); *Nemitz v. Norfolk & W. R. Co.*, 287 F. Supp. 221, 231 (N.D. Ohio), *aff'd by* 404 U.S. 37 (1971) (defense of accord and satisfaction because of settlement agreement may not be raised in a motion to dismiss). Neither of these affirmative defenses can be resolved without further development of the record.

## CONCLUSION

It cannot be determined at this stage in the litigation whether Worldcom was required to file the contracts. Moreover, even if the contracts at issue were required to be filed, this fact does not preclude Worldcom from any recovery. Worldcom may be able to prove facts in support of its claims which would entitle it to relief. *Conley*, 355 U.S. at 45-46.

We **REVERSE** the district court's order dismissing Worldcom's complaint. We **REMAND** for further proceedings consistent with this opinion.

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*