SLOVITER, Circuit Judge,
Dissenting in part.
I join Parts I, II and III.A of the majority’s thorough opinion. I can certainly understand why the District Judge, presented with a complaint of 125 pages which, even after amendment, failed to correct the inadequacies previously noted by the court, decided that Plaintiffs should be given no further opportunities to state a claim. I believe, however, that Plaintiffs may have colorable claims under § 11 of the Securities Act and § 14(a) of the Exchange Act and that the dismissal with prejudice as to these specific claims was not in the proper exercise of the court’s discretion. Accordingly I respectfully dissent, in part, from Parts III.B and III.C of the majority opinion.
I.
On June 17, 1999, Chubb and Executive Risk filed their registration statement and merger proxy pursuant to the proposed merger. The second quarter 1999 closed on June 30, 1999. Executive Risk shareholders approved the proposed merger on July 19, 1999. Only eight days later, on July 27, Chubb released its second quarter results, which fell short of earnings projections by four cents per share. Although this may not appear significant to a lay person, these results were described by securities analysts as a “shocking disappointment.” [29]
Plaintiffs argue that Defendants had a duty to disclose the disappointing mid-second quarter results in their June 17, 1999 registration statement and merger proxy materials. Failure to do so allegedly rendered them false and misleading, and gave rise to a private cause of action not only under § 10(b) of the Exchange Act but also under § 14(a) of the same Act and § 11 of the Securities Act. See, e.g., Herman & MacLean v. Huddleston, 459 U.S. 375, 382-83, 103 S.Ct. 683, 74 L.Ed.2d 548 *167 (1983) (holding that action under sections 11 and 10(b) may arise from same disclosure).
Despite the fact that averments under §11 and § 14(a) need not allege scienter, I do not disagree with the majority that these claims as pled were “grounded in fraud” and therefore, subject to the heightened pleading requirements of Fed. R.Civ.P. 9(b) and the Private Securities Litigation Reform Act (PSLRA). See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1329 (3d Cir.2002); Shapiro v. UJB Fin. Corp., 964 F.2d 272, 288-89 (3d Cir.1992). The majority thus applies the same sweeping particularity analysis applicable under the PSLRA and Rule 9(b) to Plaintiffs’ § 10(b) claims as it does to Plaintiffs’ § 11 and § 14(a) claims. It then concludes that the “ ‘true facts’ allegations, which purportedly demonstrate why Defendants’ various ... disclosures ... were materially false” were not pled by Plaintiffs with the requisite particularity. See Maj. op. at 145. Accordingly, the majority affirms the District Court’s dismissal under Fed. R.Civ.P. 12(b)(6) and its denial of leave to amend.
While I agree with the majority’s decision to dismiss the Second Amended Complaint on particularity grounds, the majority fails to discuss whether Plaintiffs may have colorable claims under § 11 and § 14(a).
II.

A Colorable Claim Exists Under §11 of the Securities Act and § 14(a) of the Exchange Act

It is well established that a statutory duty exists to disclose all material information in connection with a registered stock offering, proxy solicitation or shareholder vote. Section 11 of the Securities Act provides that a private action for damages may be brought “by any person acquiring such security” if a registration statement, as of its effective date: (1) “contained an untrue statement of material fact”; (2) “omitted to state a material fact required to be stated therein”; or (3) omitted to state a material fact “necessary to make the statements therein not misleading.” 15 U.S.C. § 77k(a). Liability attaches to, inter alia, all persons who sign the registration statement, including the “issuer, its principal executive officer or officers,” and pursuant to § 15 of the Securities Act, every control person of a party liable under § 11. See 15 U.S.C. §§ 77k(a); 78f(a).
Likewise, the Exchange Act’s provision governing proxy solicitations, § 14(a),[30] and Rule 14a-9 promulgated pursuant thereto,[31] provide a private cause of action for the solicitation of proxies that contain any materially false or misleading information. See 15 U.S.C. § 78n; 17 C.F.R. *168 § 240.14a-9; see also J.I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Section 14(a) liability attaches to all parties who negligently execute a proxy statement, and pursuant to § 20(a) of the Exchange Act, any person “who directly or indirectly,' controls any person” who negligently executes a proxy statement. 15 U.S.C. § 78t(a).’
Significantly, an action under § 11 or § 14(a) does not require any allegation that a defendant acted with scienter. See Herman & MacLean v. Huddleston, 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 274 n. 7 (3d Cir.2004) (“Section[ ] 11 ... [is a] virtually absolute liability provisionf], which do[es] not require plaintiffs to allege that defendants possessed any scienter.”); Gould v. American-Hawaiian S.S. Co., 535 F.2d 761, 777 (3d Cir.1976) (in imposing negligence standard, we stated “[t]he language of section 14(a) and Rule 14a-9(a) contains no suggestion of a scienter requirement, merely establishing a quality standard for proxy material”). Their “primary purpose ... is to protect investors by requiring publication of material information thought necessary to allow them to make informed ... decisions concerning public offerings of securities.” Pinter v. Dahl, 486 U.S. 622, 638, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); see also Sec. & Exch. Comm’n v. Ralston Purina Co., 346 U.S. 119, 124, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); Desaigoudar v. Meyercord, 223 F.3d 1020, 1024 (9th Cir.2000).
In Shaw v. Digital Equip. Corp., 82 F.3d 1194 (1st Cir.1996), superseded by statute on other grounds, the Court of Appeals for the First Circuit held that a legally cognizable claim under § 11 could be made for failure to disclose mid-quarter results in a registration statement, which “indicatfe] some substantial likelihood that the quarter would turn out to be an extreme departure from publicly known trends and uncertainties.” Id. at 1211. The defendant’s registration statement in that case became effective and . its stock offering took place “11 days prior to the close of the quarter then in progress, and about three weeks prior to the company’s announcement of an unexpectedly negative earnings report for that quarter.” Id. at 1199. The court reasoned that the “corporate issuer in possession of material nonpublic information, must, like other insiders in the same situation, disclose that information to its shareholders or refrain from trading with them.” Id. at 1203-04 (internal quotations and citation omitted). Such disclosure is especially
crucial in the context of a public offering, where investors typically must rely ... on an offering price determined by the issuer and/or the underwriters of the offering.... Accordingly the disclosure requirements associated with a stock offering are more stringent than, for example, the regular periodic disclosures called for in the company’s annual Form 10-K or quarterly Form 10-Q filings under the Exchange Act.
Id. at 1208 (internal citation omitted).
Shaw rejected “any bright-line rule” as to when mid-quarter disclosures must be made, stating that in “many circumstances, the relationship between the nonpublic information that plaintiffs claim should have been disclosed, and the actual results or events that the undisclosed information supposedly would have presaged will be so attenuated that the undisclosed information may be deemed immaterial as a matter of law.” Id. at 1210-11. The situation before us is not one of those instances.
Akin to the factual circumstances in Shaw, Chubb filed its registration statement thirteen days prior to the close of a disappointing second quarter, the results *169 of which, by all accounts, were the product of more than a mere “minor business fluctuation.” Id. at 1211. Analysts’ reports stated that these results were a “shocking disappointment” and that the “standard commercial results were awful.” See supra, note 1. Surely, “there is a substantial likelihood that a reasonable shareholder would consider [such information] important in deciding how to vote.” TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) (defining element of materiality as “a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the ‘total mix’ of information made available”); see also Basic, Inc. v. Levinson, 485 U.S. 224, 232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).
Furthermore, following the First Circuit in Shaw, I see no reason not to accept Plaintiffs’ allegations that Chubb was in possession of information concerning the Company’s quarter-to-date performance at the time it issued its registration statement. Shaw, 82 F.3d at 1211 (accepting assumption that corporations regularly monitor their financial performance). Thus, at this early pleading stage, I conclude that Plaintiffs may entertain an actionable claim under § 11 of the Securities Act against Defendants Chubb, O’Hare, Schram and Kelso.[32]
For the same reasons, it appears that failure to disclose Chubb’s mid-second quarter results in the proxy materials would be actionable under § 14(a) of the Exchange Act. “Only when the proxy statement fully and fairly furnishes all the objective material facts as to enable a reasonable prudent stockholder to make an informed investment decision is the federal purpose in the securities law served.” Mendell v. Greenberg, 927 F.2d 667, 674 (2d Cir.1991); see TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 448, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Furthermore, Rule 14a-9 “specifically requires that solicitation material which has become false or misleading must be corrected by subsequent materials.” Gould v. American Hawaiian S.S. Co., 351 F.Supp. 853, 868 (D.Del.1972), rev’d and remanded on different grounds, 535 F.2d 761 (3d Cir.1976). Thus, even assuming that the proxy materials were accurate when initially prepared by Defendants, Rule 14a~9 mandates that they be amended to reflect the disappointing second quarter results at some point prior to the Executive Risk shareholder vote, a vote which incidently occurred nearly three weeks after the second quarter ended.
Although this court has imposed a slightly higher standard of materiality in the § 14(a) and rule 14a-9 context than in the § 11 context,[33] I cannot conclude, as a matter of law, that these non-disclosures were immaterial. Therefore, in my opinion, Plaintiffs also appear to have a facially valid claim under § 14(a) and Rule 14a-9 against all Defendants.
*170 III.

Leave to Amend the § 11 and § 11(a) Claims Should be Granted

Fed.R.Civ.P. 15 provides that a party may amend its pleading once before a responsive pleading is served, or thereafter “by leave of court or by written consent of the adverse party.” Such “leave shall be freely given when justice so requires.” Id.
In affirming the District Court’s dismissal of Plaintiffs’ Second Amended Complaint with prejudice, the majority implicitly approves the District Court’s conclusion that “[i]n the context of securities fraud actions ... Rule 15 must be viewed more strictly so as not to vitiate the heightened pleading requirements of the Reform Act by providing plaintiffs unlimited opportunities to amend.” App. at 895 (citing In re Cybershop.com Sec. Litig., 189 F.Supp.2d 214, 237 (D.N.J.2002)).
The. tension between the liberal amendment approach of Fed.R.Civ.P. 15 and the strict pleading requirements of the PSLRA has been noted by the courts. Our court seems to have given inconsistent signals. Compare In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1333 (3d Cir.2002) (stating in dictum that goals of PSLRA “would be thwarted if, considering the history of this case, plaintiffs were liberally permitted leave to amend again”), with Werner v. Werner, 267 F.3d 288, 297 (3d Cir.2001) (“we will not add to the strict discovery restrictions in the ... PSLRA ... by narrowly construing Rule 15 in this case, even at this late stage in the litigation. Given the high burdens the PSLRA placed on plaintiffs, justice and fairness require that the plaintiffs before us be allowed an opportunity to amend their complaint to include allegations relating to the newly discovered Board meeting minutes.”).
The same differences also appear in the decisions of other circuit courts. Compare Miller v. Champion Enters., Inc., 346 F.3d 660, 690-92 (6th Cir.2003) (stating in dictum that “to prevent harassing strike suits filed the moment a company’s stock price falls ... would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA”) (internal quotations and citation omitted), with Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir.2002) (reasoning that “leave to amend is particularly appropriate where the complaint does not allege fraud with particularity”); see also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.2003) (per curiam) (“Adherence to these principles [governing leave to amend] is especially important in the context of the PSLRA.... In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.”).
We need not resolve the issue raised in the above cases because Plaintiffs should be able to file an amended complaint based on § 11 and § 14(a) that, if divorced from any allegations of fraud, would not be subject to heightened pleading requirements of the PSLRA. Whereas allowing any further amendment to Plaintiffs’ § 10(b) claims would be an abuse of discretion because, as the majority states, “Plaintiffs here have proffered no additional facts that would cure the pleading deficiencies of [such claims],” see Maj. op. at p. 164, the same cannot be said for Plaintiffs’ § 11 and § 14(a) claims.
Stated otherwise, if given leave to amend, these claims may be pled in a manner which would survive a motion to dismiss under Rule 12(b)(6). See Lone Star Ladies Inv. Club v. Schlotzsky’s Inc., 238 F.3d 363 (5th Cir.2001) (holding that district court’s dismissal with prejudice of complaint alleging both § 10(b) and § 11 *171 claims was abuse of discretion because plaintiffs had colorable § 11 claim and could plead it in amended complaint, absent any allegation of fraud).
This court has adopted a liberal approach to the amendment of pleadings to ensure that “a particular claim will be decided on the merits rather than on technicalities.” Dole v.Arco Chem. Co., 921 F.2d 484, 487 (3d Cir.1990). The Supreme Court’s holding in Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), is axiomatic:
[i]n the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules required “be freely given.”
Id. at 182, 83 S.Ct. 227; see also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir.2000); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993).
The majority affirms the District Court’s order denying leave to amend the Second Amended Complaint, stating that “with respect to the section 11 claims, Plaintiffs were explicitly warned to either plead those claims in accordance with Rule 9(b), or strip them of all averments of fraud. Plaintiffs chose at their peril not to heed the District Court’s guidance and avail themselves of an opportunity to rectify the deficiencies of the Amended Complaint.” See Maj. typescript op. at 168 (citing Krantz v. Prudential Invs. Fund Mgmt., LLC, 305 F.3d 140, 144 (3d Cir.2002)).
We have repeatedly held that “prejudice to the non-moving party is the touchstone for the denial of an amendment.” Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (internal citations and quotations omitted); see also Cornell & Co. v. Occupational Safety & Health Review Comm’n, 573 F.2d 820, 823 (3d Cir.1978). For purposes of Rule 15, the term prejudice “means undue difficulty in [defending] a lawsuit as a result of a change in tactics or theories on the part of the other party.” Deakyne v. Comm’rs of Lewes, 416 F.2d 290, 300 (3d Cir.1969). In the absence of substantial prejudice, denial instead must be based on “truly undue or unexplained delay ... or futility of amendment.” Lorenz, 1 F.3d at 1414; see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434-35 (3d Cir.1997).
The District Court concluded that “to require defendants to defend the action, and ultimately to incur the effort and expense of a third motion to dismiss after two successful dismissal motions, would clearly constitute undue prejudice to the defendants.” App. at 896.
The District Court’s determination that leave to amend would cause undue prejudice was made in connection with the complaint as a whole, which included Plaintiffs’ essentially futile § 10(b) claims. If Plaintiffs were given leave to amend to assert only their colorable § 11 and § 14(a) claims, it is difficult to see why Defendants would suffer undue prejudice in being required to respond to a Third Amended Complaint. Defendants have been on notice of such claims since the inception of the present action and thus any amendment would not require them to respond to any novel or unrelated tactics or theories. In fact, elimination of the § 10(b) fraud claims from any future complaint would materially limit the scope and complexity of the present action. While Plaintiffs may have been obtuse, they have not exhibited any showing of bad faith or caused Defendants to suffer undue delay. “Limited delays and the prejudice to a defendant *172 from the pendency of a lawsuit are realities of the system that have to be accepted.” See Ash v. Cvetkov, 739 F.2d 493, 496 (9th Cir.1984).
I am not persuaded by the majority’s heavy reliance on the fact that Plaintiffs failed to heed the advice of the District Court. We have stated that in complex litigation, the mere fact that a claimant has had several attempts to comply with pleading requirements is not itself a sufficient basis to dismiss a complaint with prejudice. WorldCom, Inc. v. Graphnet, Inc., 343 F.3d 651, 657 n. 3 (3d Cir.2003); accord Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1053 (9th Cir.2003) (Reinhardt, J., concurring) (noting that “the undeservedly common ‘three bites at the apple’ cliche ... too often provides a substitute for reasoned analysis”).
This would not be a third effort, although the majority so implies. Plaintiffs’ Second Amended Complaint, at issue in this appeal, was only the first attempt at a substantive amendment; the First Amended Complaint was merely a re-filing of the original complaint after the District Court appointed lead Plaintiffs. Thus, Plaintiffs have been given only one opportunity to properly amend their complaint.
Of course, if Plaintiffs were given the opportunity to replead the § 11 and § 14(a) claims, they would need to comply with the requirement that they do so in “a short and plain statement” of the claims. See Fed.R.Civ.P. 8(a)(2). Admittedly, Plaintiffs’ counsel has not shown either the ability or disposition to do so. Their brief was as wordy as their complaint. Nonetheless, I would not preclude them the opportunity to assert a possibly meritorious claim because of defects in the pleadings. See In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1435 (stating that where complaint is dismissed on particularity grounds, leave to amend is ordinarily granted); Shapiro, 964 F.2d at 278; Luce v. Edelstein, 802 F.2d 49, 56-57 (2d Cir.1986); Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 562 n. 6 (2d Cir.1985). In my opinion, Plaintiffs should be given a final opportunity to assert their § 11 and § 14(a) claims with instructions to plead such claim absent any allegations of fraud.

. Plaintiffs' complaint quotes PaineWebber's July 27, 1999 report as stating:
[i]n what was perceived as a shocking disappointment, Chubb reported flat premiums for the second quarter with earnings ... short of the Street consensus.... Management dampened its earlier enthusiasm for improving market conditions, which had ratcheted up expectations early in the second quarter.... Total standard commercial business shrank 9.0%, more than expected. The combined ratio remained unacceptably high at 120.8%. Commercial multiperil results were terrible.... Premiums in total were flat rather than up about 5% as expected.
App. at 727 (ellipses in original).
Prudential Securities issued a report on July 27, 1999 stating that the ''[sjtandard commercial results were awful.... The total standard commercial book reported a combined ratio of 120.8% slightly better than a year ago but deteriorated from the 117.9% reported in the first quarter.” App. at 728 (ellipse in original).

. § 14(a) of the Exchange Act states:
It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 781 of this title.
15 U.S.C. § 78n(a).

. Rule 14a-9 provides:
No solicitation subject to this regulation shall be made by means of any proxy statement ... containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading....
17 C.F.R. § 240.14a-9(a).

. See also In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 70-71 (2d Cir.2001) (holding that material decline in sales or earnings is information that must be disclosed); In re Campbell Soup Co. Sec. Litig., 145 F.Supp.2d 574, 590-91 (D.N.J.2001) (same); see also Steckman v. Hart Brewing, Inc., 143 F.3d 1293 (9th Cir.1998) (noting that material mid-quarter "slowdown” in business or orders would need to be disclosed).

. See Gould v. American-Hawaiian S.S. Co., 535 F.2d 761, 771 (3d Cir.1976) (holding that "the basic test of materiality in a section 14(a) setting is whether it is probable that a reasonable shareholder would attach importance to the fact falsified, misstated or omitted in determining how to cast his vote on the question involved”) (emphasis added).