

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2005

# Adam Tech Inc v. Hewlett Packard Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1306

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Adam Tech Inc v. Hewlett Packard Co" (2005). *2005 Decisions.* Paper 1518.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1518

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 04-1306

ADAM TECHNOLOGIES, INC.

<u>Appellant</u>

v.

HEWLETT PACKARD COMPANY;
COMPAQ COMPUTER CORPORATION

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-cv-03463)
District Judge: Hon. Dennis M. Cavanaugh

Argued November 2, 2004

BEFORE: ALITO, FUENTES and COWEN, <u>Circuit Judges</u>

(Filed February 2, 2005)

Harold M. Hoffman, Esq. (Argued)
75 Grand Avenue
Englewood, NJ 07631

Counsel for Appellant

Christopher J. Dalton. (Argued)
Klett, Rooney, Lieber & Schorling
550 Broad Street
Suite 810
Newark, NJ 07102

Counsel for Appellees

OPINION

COWEN, Circuit Judge.

Adam Technologies, Inc. ("ATI")[1] appeals the District Court's order dismissing its complaint against Hewlett-Packard Company ("Hewlett-Packard") and Compaq Computer Corporation ("Compaq Computer," together with Hewlett-Packard, "Compaq")[2] on the basis that the claims were time barred. ATI contends that the complaint was not barred by the statute of limitations because the agreement was governed by a six-year, rather than a four-year, limitations period. Alternatively, ATI asserts that its claims accrued within four years of filing the complaint. We have jurisdiction pursuant to 28 U.S.C. §1291 and will reverse and remand for further proceedings.

---

[1] In June 1997, ATI was a wholly owned subsidiary of Methode Electronics, Inc. ("Methode"). On April 30, 2003 Methode conveyed all outstanding shares of ATI stock to Vincent DeVito, an individual who was formerly a majority shareholder of ATI. (App. 104.)

[2] In or about May 2003, Compaq Computers merged with, and became a wholly-owned subsidiary of, Hewlett-Packard.

Compaq manufactures computers, hardware, and peripheral devices. Instead of manufacturing all of the component parts for its computers, Compaq hires "third-party integrators" to assemble machines pursuant to Compaq's specifications, using parts from suppliers approved by Compaq. IEC Electronics ("IEC"), not a party in this action, was one of Compaq's third-party integrators.

ATI is in the business of manufacturing and selling devices known as "connectors," which connect computer hardware equipment. ATI entered into an agreement with IEC (the "IEC Agreement") whereby ATI would supply IEC with 225,000 connectors for use in Compaq computers. After ATI had supplied over 100,000 connectors pursuant to the IEC Agreement, Compaq and IEC discovered that the specifications they had provided ATI for the connectors were flawed. In order to remedy the situation, ATI agreed to issue IEC a credit for $200,000 and cancel the IEC Agreement. In exchange, Compaq, who was not a party to the IEC Agreement, entered into an agreement with ATI (the "Compaq Agreement") on September 18, 1998.

The Compaq Agreement provides that Compaq's third-party integrators (including, but not limited to IEC) would purchase specified percentages of their future allocations of two types of connectors from ATI, subject to certain conditions. As stated in the agreement:

> Compaq will issue 60% ongoing allocation of Compaq P/N 241379-001 and 50% ongoing allocation of Compaq P/N 122721-002.

> This entire Agreement is contingent upon Compaq's approval of the

3

attached Rev. A of [ATI] Drawing . . . (Compaq P/N 241379-001), and Compaq's acceptance of a control lot production run . . . .  The 50% allocation of 122721-002 is dependent upon Compaq's acceptance of first article samples provided by [ATI], for the life of the component on those products currently approved for use of such component as long as [ATI] meets the quality, reliability and capacity requirements of Compaq.

(Appellant's App. at 74.)

In February 1999, Compaq advised ATI that it was being placed on "disqualified/ restricted status" because its manufacturing facility was deficient.  (Id. at 78.)  Compaq explained that it was instructing its integrators not to purchase any connectors from ATI, unless and until these deficiencies were remedied.  Discussions concerning a subsequent inspection of the ATI facility continued through October, 1999.

On January 20, 2000, Compaq sent ATI an e-mail explaining that it did not receive any of the allocations for the first quarter of 2000.  It further stated that "these products will now be bid on yearly."  (Id. at 97.)  At a meeting held that same day, Compaq allegedly indicated it was unilaterally abandoning the qualification process, and was thereby rescinding the Compaq Agreement.

On July 22, 2003, ATI filed a complaint, in the district court under diversity jurisdiction, alleging two causes of action for breach of contract.  Compaq filed a pre-answer motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgement pursuant to Fed. R. Civ. P. 56 on the following grounds:  (1) the complaint was time-barred; (2) ATI failed to meet a condition precedent to the agreement; and (3) ATI had taken inconsistent legal positions in serial litigation.  The District Court

4

granted the motion on the grounds that the complaint was time-barred and did not reach the alternative theories supporting dismissal.

We review *de novo* the District Court's order granting defendant's motion to dismiss, see Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003), or motion for summary judgment, see Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679 (3d Cir. 2003). Dismissal on a pre-answer motion is only appropriate if it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Worldcom, Inc., 343 F.3d at 653. Here, the District Court considered the motion under the standards set forth in both Rule 12b(6) and Rule 56 because the parties relied on evidence outside of the pleadings.

On this appeal, we limit our analysis to the accrual of the cause of action and make no findings as to the nature of the contractual relationship or the ultimate merits of the complaint. If ATI's claims accrued after July 22, 1999, then the complaint would be timely regardless of whether a four or a six year limitations period were applicable.

As the legislature has not defined when a cause of action shall be deemed to have accrued, the matter has been left to "judicial interpretation and administration". Rosenau v. City of New Brunswick, 238 A.2d 169, 172 (N.J. 1968). Under New Jersey law, a cause of action accrues so that the applicable statute of limitations commences to run, "when the potential plaintiff knows of his or her injuries and of facts sufficient to attribute those injuries to the fault of another." Windsor Card Shops, Inc. v. Hallmark

Cards, Inc., 957 F.Supp. 562, 566 (D.N.J. 1997) (quoting Viviano v. CBS, Inc., 503 A.2d 296, 300 (N.J. 1986)). In other words, a claim accrues, for statute of limitations purposes, when the plaintiff has an enforceable right to institute and maintain an action. See Metromedia Co. v. Hartz Mountain Assocs., 655 A.2d 1379, 1381 (N.J. 1995).

Here, Compaq contends and the District Court found that ATI's claims accrued in February 1999, when Compaq first notified ATI that it would be placed on "disqualified/restricted status." The District Court concluded, "there is no question but that the Plaintiff was on notice as of February 1999 of the alleged breach." (Appellant's App. at 117.) We disagree.

The February 1999 notification was merely meant to suspend, rather than eliminate, Compaq's obligations pending future compliance with Compaq's "minimum quality, process control, and material management requirements for support." (Id. at 79.) Compaq contemplated that ATI may obtain approved status as reflected in the message: "I know that Adam Tech will want to do every thing possible to rectify this situation as quickly as possible." (Id. at 78.) One month later, Compaq continued to maintain that until the "qualification of the facility has been completed and . . . has been approved we cannot qualify any components built in those facilities." (Id. at 84.) Such notifications are not sufficient to trigger the running of the statute of limitations.

In addition, the relationship between Compaq and ATI was subject to certain qualification requirements. The Compaq Agreement conditions a significant part of

Compaq's obligations on ATI meeting "the quality, reliability and capacity requirements of Compaq." (Id. at 74.) Three months after executing the Compaq Agreement, Compaq sent a letter to ATI explaining that:

> [a]s a consequence of [a] reorganization, and due to the timing of the recent negotiations, Compaq has made the decision to review the results and awards given for the '99 business, and are requesting that a review of the negotiations and subsequent awards be held . . . . We intend to make this review process as painless as possible for all parties involved.

(Id. at 76.)

Failure to pass Compaq's review was the stated reason for the disqualification: "We regret having to take this course of action, but cannot continue to receive product, or approve new designs, from a facility that (of its' own accord, as well as from the report) cannot meet our minimum quality, process control, and material management requirements for support." (Id. at 79.) As it was Compaq's position that the review process was permissible, it cannot now take the position that it breached the contract by placing ATI on restricted status as a result of its failure to meet Compaq's minimum standards.

Finally, the tone of the February e-mail suggests, and ATI expected, the parties would work together to restore ATI to approved status. As stated in the message attaching the survey report:

> Please let me know as soon as [ATI] is able to come up with a plan of action for recovery. I will do whatever I can on this end to help with that effort. I am sure that a personal visit from yourself and or Vince is one of the options that will be considered, and I am ready to put that together as

7

soon as you think it is appropriate.

(Id. at 78.)

Significantly, Compaq purported to work in tandem with ATI for several months thereafter to complete the facility site visit and qualification process. In a letter dated March 1999, a Senior Manager of Compaq wrote to ATI: "I am glad to hear things are progressing on the qualification process . . . Compaq would be glad to meet and discuss the requirements necessary in order to fulfill the expectations of the 5-Step development process for new parts." (Id. at 84.) Even as late as October 22, 1999, Compaq and ATI were still contemplating a site visit and completion of the qualification process. (Id. at 96.)

We refrain from deciding whether any subsequent action taken by Compaq constitutes a breach. Any such assertion should be considered by the District Court in the first instance. For purposes of this appeal, we merely conclude that ATI did not have an actionable claim against Compaq before July 22, 1999. Accordingly, even assuming *arguendo* applicability of a four-year limitations period, the complaint filed on July 22, 2003, would be timely.

For the foregoing reasons, the judgment of the District Court entered on January 23, 2004, will be reversed and the matter will be remanded for further proceedings.