# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EPHOCA INC.,                    )
                               )
    Plaintiff,              )
                               )
    v.                      )    C.A. No. N23C-08-142 CEB
                               )
OLIMPIA SPLENDID USA, INC.,     )
                               )
    Defendant.              )


Submitted:  December 1, 2023
Decided:  February 20, 2024

## ORDER

*Upon Consideration of Defendant Olimpia Splendid*
*USA, Inc.'s, Motion to Dismiss,*
**DENIED**


William E. Gamgort, Esquire, Elise K. Wolpert, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. *Attorneys for the Plaintiff.*

Joseph B. Cicero, Esquire, Thomas A. Youngman, Esquire, Chipman Brown Cicero & Cole, LLP, Wilmington, Delaware. *Attorneys for the Defendant.*


**BUTLER, R.J.**

## BACKGROUND

### 1. The Complaint

According to the Complaint, Plaintiff Ephoca, Inc. ("Ephoca") manufactures large scale commercial heating, ventilation, and air conditioning ("HVAC") systems throughout the United States. Defendant Olimpia Splendid USA, Inc. ("Olimpia") also manufactures HVAC systems and also sells throughout the USA, thus putting Plaintiff and Defendant in direct competition with one another. Adding to that, both companies are subsidiaries of different parent companies, both parents are residents in Italy.

Ephoca claims that Olimpia, through its representatives, made false and defamatory representations about Ephoca's HVAC products to at least two entities with whom Ephoca had business and that Olimpia made these representations knowing about Ephoca's business relationships and knowing the statements were false.

Included with the Complaint are two exhibits: one is a letter from an attorney for Ephoca to Olimpia accusing its sales representatives of advising an Ephoca customer of delays in shipping Ephoca products and suggesting that the customer switch to Olimpia's products. The other is from Olimpia denying that its sales force

1

has done any such thing but assuring Ephoca that it will remind its sales force not to do so.

Ephoca says that because of these false statements, Ephoca was forced to lower its contract price with these two buyers by some $200,000, which does not include its losses to other industry purchasers as yet unknown. Ephoca brings claims of "trade libel," "tortious interference with contract" and "tortious interference with prospective business opportunities."

## 2. The Motion to Dismiss

Olimpia moves to dismiss. Olimpia urges that Plaintiff's claims are too vague to pass muster under existing pleading standards. While Olimpia points out many such examples, the gist is that Plaintiff did not plead its case with sufficient particularity, or clarity, or specificity to be sustainable. Olimpia's legal analysis goes no deeper than that – it feels the complaint is dismissible on its face for insufficiency of the allegations in the pleading.

Another unusual feature of Olimpia's motion to dismiss is the inclusion of the affidavit of Diego Stefani, the "executive director of sales & marketing" for Olimpia who swears to certain appended emails and agreements attached to the motions to dismiss show that the "representative" accused of these disparagements is not employed by, or an agent of, Olimpia. The exhibits do seem to suggest that there

was a person who expressed concerns with Ephoca's timely delivery of its products and suggested a switch to Olimpia. The affidavit avers that this person is not an employee or agent of Olimpia, but rather a "sales engineer" for a company called Air Treatment Corporation. Olimpia's affidavit attests to an attached "Sales Representation Agreement" with Air Treatment Corporation that, Olimpia apparently feels, absolves it of any liability for this whole misunderstanding. Could this be the representor of the representations that Ephoca feels libeled Ephoca in its business dealings? Maybe so.

Or maybe not. It is too early to tell. Ephoca opposes the motion to dismiss but does not concede Olimpia's supposition that Air Treatment made the representations. Rather, Ephoca says Olimpia is attempting to hold this Complaint to a Rule 9 standard of detail, when it should be judged by the lesser requirements of Rule 8. More importantly, Ephoca argues that a motion to dismiss must be judged by the four corners of the Complaint and the Court may not consider the extraneous matters introduced by the defense's affidavit and accompanying exhibits.

In its reply to Ephoca's answer, Olimpia reiterates how little it thinks of Ephoca's Complaint and in particular, its lack of attention to what specific facts, representations, to whom, about what are alleged in the Complaint. If Ephoca feels it has been besmirched, when and where, Olimpia wants to know, did that happen and who did the besmirching?

3

**DISCUSSION**

## 1. The Pleading Standard

Olimpia expends much energy complaining that the Complaint is fatally pled in that its allegations are vague, general, and insufficient. But Super. Ct. Civ. R. 8(a) gives the Complainant a wide berth at the stage of initial pleading. Rule 8 provides that a claim is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."[1] The only exception to that is found in Rule 9 when "pleading special matters."[2] Special matters include "fraud, negligence, mistake, condition of mind."[3] None of the counts in Plaintiff's Complaint are allegations of fraud, negligence, or mistake. Thus, Plaintiff's Complaint is sufficient if it is a short and plain statement of the claim.

Moreover, the standard for survival of a Complaint in the face of a motion to dismiss is quite low.[4] The Court must 1) accept as true all factual allegations of the Complaint,[5] 2) credit even vague allegations in favor of sustaining the Complaint,

---

[1] Super. Ct. Civ. R. 8(a).
[2] Super. Ct. Civ. R. 9(b).
[3] Id.
[4] *See Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978) ("The test for sufficiency is a broad one, that is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint." (internal citations omitted)).
[5] *Page v. Oath, Inc.*, 270 A.3d 833, 842 (Del. 2022).

4

so long as they give Defendant notice of the claim,[6] 3) draw all reasonable inferences in favor of the Complaint,[7] and 4) deny dismissal if recovery on the claim is reasonably conceivable.[8] "The complaint ordinarily defines the universe of facts from which the trial court may draw in ruling on a motion to dismiss."[9] Affirmative defenses may not be considered[10] and matters submitted outside the Complaint – such as an affidavit of Defendant's executive – may only be considered when it is "integral to Plaintiff's claim and incorporated into the Complaint,"[11] which this affidavit is not. The affidavit here is submitted as if to emphasis the rightness of Plaintiff's claim; it is not integral to the complaint.

## 2. The Claims

The defense cites to the Court various decisions concerning defamation, fair debt collections practices and civil rights suits to support its position that the allegations of this Complaint are deficient. But the cases cited are not persuasive,

---

[6] *Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).
[7] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).
[8] *Kofron v. Amoco Chemicals, Corp.,* 441 A.2d 226, 227 (Del. 1982).
[9] *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001).
[10] *See Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 657 (3d Cir. 2003) (Except in cases where Complaint reveals existence of affirmative defense that mandates dismissal, "affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b).").
[11] *Windsor I, LLC v. CWCapital Asset Management, LLC* 283 A.3d 863, 873 (Del. 2020) (internal citations omitted).

or even relevant to the question whether Plaintiff has lodged a short and plain statement putting the Defendant on notice of claims for tortious interference or trade libel.

## A. Trade Libel

The Restatement (Second) of Torts defines "Liability for Publication of Injurious Falsehood" as liability attaching for statements that are false and result in pecuniary loss when the publisher "intends for publication of the statement to result in harm to the interests" of another when he knows that the statement "is false or acts in reckless disregard of its truth or falsity."[12]

This general principal is refined further with respect to trade libel. Liability attaches so long as the publisher "should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property."[13]

Defendant does not dispute that the Complaint puts it on notice of the nature of the claim. The Defendant is so well aware of the claim that it mounts a defense on the merits of the claim in its motion. Defendant argues that 1) the Complaint does not identify the specific libelous statement(s), 2) Defendant cannot be liable

---

[12] Restatement (Second) of Torts § 623A.
[13] Restatement (Second) of Torts § 626.

because it did not make the statement – by referencing facts outside the Complaint, 3) does not explain what the truth is (as opposed to the falsity, as alleged), and 4) Plaintiff unilaterally lowered its price on goods and has not proven that lowering prices was caused by the allegedly libelous statements.

A savvy reader would recognize many of these arguments to be ones we might expect on a motion for summary judgment, or in front of a jury, not a motion to dismiss, as they rely on facts and assumptions not set forth in the Complaint. The Plaintiff need only put the Defendant on notice, it need not lay out its whole case in the Complaint. There will be time enough for that once discovery has concluded.

### B. Tortious Interference

Counts 2 and 3 are related: tortious interference with contractual relations and tortious interference with prospective business opportunities. So, Count 2 is about existing business and Count 3 is about future business, but both presume that Defendant is guilty of tortious conduct that interfered with each.

Defendant argues that tortious interference with contractual relations requires that Plaintiff plead a breach of an actual contract and identification of the breached clause(s). Plaintiff urges that a breach is alleged insofar as Plaintiff was "compelled" to accept less than the full contract price in order to avoid losing the contract altogether. Read liberally, as we must, the allegation is that the other contracting

7

party forced a concession on Plaintiff that Plaintiff was only required to accept because of Defendant's tortious conduct. Whether that is true or not remains to be fleshed out, but the Court is constrained not to dismiss the Complaint where Plaintiff has sufficiently put forward a claim that the contract had to be altered, if for no other reason, than to mitigate the losses caused by Defendant's tortious interference.

As to the tortious interference with prospective gain claim, Defendant again faults Plaintiff for failing to identify the who/when/where/how/why it lost prospective business. But it is not up to Plaintiff to do so in its initial Complaint. Plaintiff correctly recites in its response that Plaintiff has a right to compete in the marketplace with the Defendant and the determination of whether its statements were "unjustified is a fact-intensive question that cannot be resolved on a motion to dismiss."[14]

Plaintiff recites in its Complaint that it was in negotiations with a purchaser of Plaintiff's products when the identified buyer forced Plaintiff to lower the contract price because of the false statements by Defendant. That does not, of course, make any of this demonstrably true. Defendant should (and will) have the opportunity to depose the relevant parties, examine the relevant documents, and put Plaintiff to the test of proving it. But Defendant cannot short circuit that process with a motion to

---

[14] Pl.'s Answering Br. ₱ 30; *see Bandera Master Fund LP v. Boardwalk Pipeline Partners*, LP, 2019 WL 4927053 at *25-27 (Del. Ch. Oct. 7, 2019).

8

dismiss that challenges virtually all of Plaintiff's factual allegations. That is what we have trials for. Rather, each allegation must be assumed to be true for purposes of the instant motion – Defendant's frustration with that presumption notwithstanding.

## CONCLUSION

For the reasons set forth above, the Defendant's motion to dismiss Plaintiff's Compliant is **DENIED.** Defendant shall file an Answer to the Complaint. A trial availability letter shall issue from the Court immediately thereafter.

**IT IS SO ORDERED**.

/s/ Charles E. Butler
Charles E. Butler, Resident Judge